177 N.J. Super. 412 (1981)
426 A.2d 1061
KAZMER-STANDISH CONSULTANTS, INC., PLAINTIFF-APPELLANT,
v.
SCHOEFFEL INSTRUMENT CORP. AND KRATOS, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 13, 1981.
Decided February 19, 1981.
*413 Before Judges BOTTER, KING and McELROY.
Dennis W. Blake argued the cause for appellant (Friedland & Rudolph, attorneys).
Michael S. Meisel argued the cause for respondents (Cole, Berman & Belsky, attorneys; Michael S. Meisel and Gerald H. Gline on the brief).
The opinion of the court was delivered by KING, J.A.D.
Plaintiff Kazmer-Standish Consultants, Inc. (Kazmer), a Cleveland, Ohio, company, styles itself as "management consultants on mergers and acquisitions." It brought an action in the Law Division against Schoeffel Instrument Corporation, a Westwood, New Jersey manufacturer of scientific instruments, and Kratos, Inc., a California conglomerate, to collect a $100,000 business broker's or finder's fee. Plaintiff alleged that its *414 services were highly instrumental in bringing Schoeffel and Kratos together for a December 1977 sale of Schoeffel's entire assets to Kratos for $2.7 million. This acquisition of assets by Kratos included the transfer of real estate, the Schoeffel plant in Westwood. At the closing the real property was transferred to Kratos by a full warranty deed, reciting a consideration of $375,000, about 14% of the entire transaction.
Defendants moved for summary judgment on the ground that plaintiff was not a New Jersey real estate broker and thus was barred from recovering any commission on a transaction involving, to any extent, the sale of real estate in this State. The Law Division judge agreed with defendants and granted the motion. Our Real Estate Broker's Act states, in pertinent part:
No person shall engage either directly or indirectly in the business of a real estate broker or salesman, temporarily or otherwise, and no person shall advertise or represent himself as being authorized to act as a real estate broker or salesman, or to engage in any of the activities described in section 45:15-3 of the Revised Statutes, without being licensed so to do as hereinafter provided. [N.J.S.A. 45:15-1]
Any single act, transaction or sale shall constitute engaging in business within the meaning of this article. [N.J.S.A. 45:15-2]
No person, firm, partnership, association or corporation shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker at the time the alleged cause of action arose. [N.J.S.A. 45:15-3]
An unbroken line of New Jersey cases, beginning with Kenney v. Paterson Milk & Cream Co., 110 N.J.L. 141 (E. & A. 1933) (9-4 decision), supports the Law Division judge's ruling that plaintiff is barred from recovery as a matter of law by these provisions of the Real Estate Broker's Act. In Kenney plaintiff provided defendant with a ready, willing and able buyer for defendant's dairy business pursuant to a written brokerage agreement. The broker agreement listed all the dairy's assets, including the real property, improvements and fixtures thereon. The value of the real estate was admittedly about one-third of the sale price. Our then highest court held that the transaction was not divisible or severable and the *415 unlicensed plaintiff could recover no commissions, even on the portion of the transaction unrelated to real estate. The holding in Kenney has been followed consistently over the years with no signs of erosion. See Kaplan v. Meranus, 136 N.J.L. 425 (Sup.Ct. 1948), aff'd 1 N.J. 219 (1948); Corson v. Keane, 4 N.J. 221 (1950); Cohen v. Scola, 13 N.J. Super. 472 (App.Div. 1951); Tanenbaum v. Sylvan Builders, Inc., 50 N.J. Super. 342 (App.Div. 1958), aff'd 29 N.J. 63 (1959); Kaufman, Inc. v. American Machine & Foundry Co., 102 N.J. Super. 1 (App.Div. 1968), aff'd 54 N.J. 239 (1969).
Kenney has spawned the nationwide majority rule which "has consistently held that if any real estate at all is involved in the transaction, the business broker must be licensed under the appropriate real estate licensing code" before any commission may be collected. Green, "The Business Broker and the Oklahoma Real Estate Licensing Code," 12 Tulsa L.Rev. 398, 404 (1976). The minority, or New York rule, "holds that where the central or dominant feature of a transaction is the sale of a business as a going concern rather than the transfer of real estate, the business broker need not be licensed as a real estate broker" to collect a commission. Id. at 399. See Weingast v. Rialto Pastry Shop, Inc., 243 N.Y. 113, 152 N.E. 693 (Ct.App. 1926). The Kenney court was aware of the Weingast decision but explicitly rejected its rationale. 110 N.J.L. at 144-146.
The competing merits of the so-called New Jersey and New York rules are ably analyzed in the Tulsa Law Review article, and the respective authorities are exhaustively collected in Annotation, "Necessity of Having Real Estate Broker's License in Order to Recover Commission As Affected by Fact That Business Sold Includes Real Property," 82 A.L.R.3d 1139 (1978). See, also, Thomas v. Jarvis, 213 Kan. 671, 518 P.2d 532, 82 A.L.R.3d 1130 (Sup.Ct. 1974) (adopting New Jersey rule). As the Tulsa Law Review article points up, the precise wording of a state's regulatory statute may in a given situation dictate one result or the other; but generally speaking, the two lines of authority are *416 distinct linear descendents of Kenney decided in 1932 and Weingast decided in 1926.
We are bound by the holding in Kenney and do not feel free to reexamine the problem in light of modern economic conditions which have proliferated national and multinational corporate mergers, acquisitions, divestitures, transfers of assets and spinoffs which have fostered the business broker's profession. Indeed, our present regulatory scheme is even stricter than in 1932 when Kenney was decided by reason of L. 1953, c. 229, p. 1687, § 2, which amended the statutory definition of "real estate broker" to embrace anyone who "solicits for prospective purchasers or assists in the procuring of prospects or directs in the procuring of prospects or the negotiation or closing of any transaction which does or is contemplated to result in the sale, exchange, leasing, renting or auctioning of any real estate." N.J.S.A. 45:15-3. The real thrust of the real estate broker's regulatory scheme is to protect the relatively unsophisticated consumer. "In contrast to the typical real estate transaction involving unsophisticated consumers, the business broker engages in arm's-length transactions with sophisticated business professionals." Green, 12 Tulsa L.Rev., supra at 401. The policy of rigid application of the Kenney majority rule to today's world of modern corporate financial transactions may be seriously questioned, but any change of such a firmly embedded rule of law must come from the Supreme Court or the Legislature, not from an intermediate appellate court.[1]
We concur generally with the remarks made by Judge Spaeth, in a similar context speaking for the Commonwealth's intermediate *417 court of appeals in Burke v. Israel, 264 Pa.Super. 286, 399 A.2d 779 (Super.Ct. 1979):
We recognize that in affirming we may be depriving appellant of money he has truly earned, and allowing appellees to repudiate their agreement with appellant while retaining the benefits of his labors. Perhaps it is true that "[i]njustice is the hallmark of the brokers' licensing acts." Comment, supra at 524. Yet the legislative policy of disallowing any action for a commission without a license is clearly expressed in the Real Estate Brokers License Act, and has been upheld by decisions of the Supreme Court and this court: If the policy is to be changed, the change must be made by the legislature. See Lurie v. Republican Alliance, 412 Pa. 61, 192 A.2d 367 (1963).
These comments may be qualified by the observation that the New Jersey statute does not expressly include a transaction involving the sale of a business in which the value of the real estate is a small portion of the whole, as in the case at hand. Unfortunately, perhaps, for the development of the rule, the sale of the real estate was specifically included in the brokerage agreement in Kenney. In the case at hand, plaintiff contends that the sale of the real estate as such was not essential, since the transaction might have been consummated by the sale of controlling shares of stock in the acquired corporation. Thus, although plaintiff may have performed the required services and might otherwise have been entitled to a commission,[2] its right to recover may be barred by the ultimate form of the transfer decided upon defendants. The Kenney rule, therefore, would allow form to prevail over substance. We would prefer to see the nature of the transaction control rather than its form.
In Solomon v. Goldberg, 11 N.J. Super. 69, 73 (App.Div. 1950), written by then Judge William J. Brennan, Jr., (now U.S. Supreme Court Justice), the court applied the Kenney rule to the transaction, but in dictum recognized a distinction to be *418 found in the nature of the transaction. Justice Brennan there wrote:
Moreover, plaintiff does not come under the protection of the decisions holding that real estate brokerage licenses are not necessary where services beyond those of a mere broker are to be performed. Agreements requiring services beyond the mere listing for and negotiating of sale of the real estate of another may be actionable when the facts support an inference the one rendering these services is not a mere broker but a promoter; Montgomery v. East Ridgelawn Cemetery, 189 Misc. 99, 68 N.Y.S.2d 836 (Sup.Ct. 1947); affirmed [272 A.D. 1048] 75 N.Y.S.2d 287 (App.Div. 1946), construing R.S. 45:15-3 of New Jersey statute; or a developer whose services also require him to improve the owner's lands, Ruta v. Werner, 1 N.J. Super. 455 (Ch. 1948); or whose agreement is with another broker in a joint promotion venture to sell lands of a real estate development company. Chew v. Markheim, 125 N.J.L. 595 (Sup.Ct. 1941).
For the foregoing reasons we are constrained to affirm the summary judgment entered in the Law Division. No costs.
NOTES
[1] The trend may be away from the so-called majority rule. See Quick Shops of Mississippi, Inc. v. Bruce, 232 So.2d 351 (Miss.Sup.Ct. 1970) (follows Weingast's New York rule). In California, which supposedly follows the New Jersey rule and treats business brokers as realtors, plaintiff here could probably recover because of a long-standing finder's exception for one who "simply finds and introduces two parties to a real estate transaction." Tyrone v. Kelley, 9 Cal.3d 1, 8, 106 Cal. Rptr. 761, 507 P.2d 65 (Sup.Ct. 1973).
[2] Apart from plaintiff's lack of a real estate broker's license, defendants do not concede that there was an agreement to pay plaintiff for its services or that plaintiff was authorized to solicit a purchaser for the Schoeffel corporation. Because of the entry of summary judgment as a matter of law it was unnecessary for the trial court to resolve any factual disputes that may have been presented.