TURNPIKE MOTORS, INC., & others[1] vs. NEWBURY GROUP,
INC., & another.[2]

Suffolk. February 2, 1988. — October 6, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Broker,* Commission. *Sale,* Of corporate property, Of stock. *Corporation,*
Sale of assets, Stock.

In an action by the sellers of two automobile dealerships seeking a declaration
that, for lack of a real estate broker's license, the defendants (broker)
were barred by G. L. c. 112, § 87RR, from recovering their agreed-upon
commissions with respect to the two transactions, this court concluded
that the broker was entitled to go to trial on its claim to a commission
on the clearly identifiable sale price of the personal property involved
in each transaction even if the statute precluded its recovery of a com-
mission on the sale prices of the dealerships' interests in real estate,
where, in the circumstances, any illegality in the broker's nonlicensure
was not such as to taint its claim to a commission on the sale of the
personal property. [294-295] O'CONNOR, J., dissenting.

In an action by the sellers of two automobile dealerships seeking a declaration
that, for lack of a real estate broker's license, the defendants (broker)
were barred by G. L. c. 112, § 87RR, from receiving their agreed-upon
commissions with respect to the two transactions, the broker was entitled
to go to trial on its claim that, by reason of the sellers' misrepresentations
that the sales were to be solely of corporate stock, and not real estate,
and by the broker's reasonable reliance on these misrepresentations, the
sellers should be estopped to deny the broker's right to a full commission.
[295-296] O'CONNOR, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department
on May 30, 1984.

The case was heard by *George C. Keady, Jr.,* J., on a
motion for summary judgment.

---

[1] Gene's Foreign Car Service, Inc., Eugene F. Looney, John A. Ryan,
and James B. Ryan. The individuals are the sole stockholders in the corpo-
rations. We refer to the plaintiffs collectively as the sellers.

[2] David Hackett. We refer to the defendants collectively as the broker.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Nicholas A. Abraham* for the defendants.

*Gary R. Greenberg (Louis J. Scerra, Jr.,* with him) for the plaintiffs.

WILKINS, J.  We conclude first that, on the sale of a business, a person not licensed as a real estate broker may recover an agreed-upon commission on the sale price of the personal property even if that person may not recover a commission on the sale price of the real estate. We next decide that the sellers were not entitled to summary judgment on the broker's claim that the sellers were estopped to deny the broker a commission on the sale price of the entire business. The broker claimed that the sellers told it that they planned to sell corporate stock, rather than assets, and that the broker would not need a real estate license. We accept that the sellers would have owed the full commission of ten per cent, based on written commission agreements, if corporate stock (and not assets) had been sold.

This case involves the sale of two automobile dealerships, one in Boston and one in Cambridge. The assets to be sold included, in each instance, an interest in real estate and both tangible and intangible personal property. The sellers commenced this action in May, 1984, seeking to enjoin the broker from interfering with the sale of the two dealerships pursuant to purchase and sale agreements entered into in March and April of 1984, respectively, and seeking a declaration that, under G. L. c. 112, § 87RR (1986 ed.), the broker was not entitled to any commission on either sale. The sellers obtained a preliminary injunction barring the broker from interfering with the sales. Somewhat later, a judge of the Superior Court allowed the sellers' motion for summary judgment, ruling that because the broker was not licensed as a real estate broker it could not recover "a commission for the sale of properties involving real estate."[3] The broker has appealed

---

[3] This language might be read as leaving unanswered the question of the broker's right to a commission on the sale of personal property. Summary judgment was entered for the sellers, however, on their complaint which sought to bar the recovery of any commission.

arguing that entry of summary judgment for the sellers was error. We transferred the appeal here.

The sellers argue that G. L. c. 112, §§ 87PP and 87RR (1986 ed.), each of which was inserted by St. 1957, c. 726, § 2, bar the broker from recovering any commissions in this case. Section 87RR provides that one who acts as a real estate broker "directly or indirectly, either temporarily or as an incident to any other transaction, or otherwise" must be licensed and that no one shall recover in any action "for compensation for services as a [real estate] broker within the commonwealth unless he was a duly licensed broker at the time services were performed." There is no doubt that the commission agreements on which the broker relies contemplate the payment of commissions on the sale of interests in real estate. For the purpose of this case, we accept the sellers' argument that the broker's efforts in seeking to sell the real estate interests made it a real estate broker for the purposes of § 87RR and that § 87RR bars the broker from recovering on the sale price of interests in real estate.[4] Because before us the broker rests its claim to a commission on the sale price of the real estate solely on a theory of estoppel, we need not decide whether, in the normal course, a broker must be licensed if he is to receive a commission on the full sale price of a business when the assets include an interest in real estate.[5]

---

[4] Section 87PP defines a "[r]eal estate broker" as "any person who for another person and for a fee . . . assists or directs in the procuring of prospects or the negotiation or completion of any agreement or transaction which results or is intended to result in the sale, exchange, purchase, leasing or renting of any real estate . . . ."

[5] The argument that a full commission is collectible would rely on implications that the Legislature did not intend § 87RR licensure requirements to apply to the sale of a business, a situation in which the seller is typically more sophisticated than is a homeowner. The argument that § 87RR is inapplicable would point (a) to the Legislature's separate treatment of business brokers (see G. L. c. 259, § 7 [1986 ed.], requiring enforceable commission agreements of business brokers to be in writing and signed) and (b) to G. L. c. 112, § 87QQ (1986 ed.) which states that § 87RR does not apply to a person dealing in stock and thus suggests that the sale of a business, or at least of a corporation or its assets, is not within the scope of § 87RR. See *Morad* v. *Haddad,* 329 Mass. 730, 735 (1953), treating the sale of the stock of a corporation as the same in legal effect as the sale of

1. The broker argues that it is at least entitled to a commission on the sale prices of the personal property involved in each transaction. There is no difficulty in determining those sale prices.[6] The broker's argument is that, even if the statute bars it from collecting a commission on the real estate, it is entitled to recover a commission on the personal property. In deciding this issue we receive little assistance from other jurisdictions because of the differences in the applicable statutes, the peculiar facts of given cases, and the lack of uniformity of the results.[7]

---

all its assets. It is perhaps not a coincidence that when the statutes concerning the registration of real estate brokers and salesman were adopted four years after the *Morad* opinion (see St. 1957, c. 726, § 2), the provision concerning the inapplicability of § 87RR to stock transactions was included, a provision not commonly found in such licensure statutes in other jurisdictions.

The contrary argument would point to § 87RR as showing that a broker is still acting as a real estate broker as to the sale of the real estate when personal property also is involved in the sale. See *Business Brokers Int'l Corp.* v. *Roderick,* 24 Mass. App. Ct. 957, 958 (1987), which in dicta states that § 87RR bars collection of a commission by an unlicensed broker who sold a business even if the real estate component was only incidental to the sale. The *Roderick* opinion did not consider the difference between a commission on the real estate and one on the personal estate, and we do not regard its dicta as commenting on an unlicensed broker's right to a commission on the sale price of personal property.

[6] In one sale, the real estate and personal property were subject to separate purchase agreements (and had separate purchasers). In the other, the purchase and sale agreement clearly identified the means for determining the sale price for the personal property, and it is not clear that any value was assigned to the sellers' transfer of its rights under its lease (which contained an option to purchase the business premises).

We note that in the latter purchase and sale agreement, the seller agreed that at the closing it would pay the broker the full amount of the commission due it "for its services in connection with this transaction."

[7] In other jurisdictions, courts have reached different conclusions as the right of an unlicensed broker to a commission on the sale of a business. Under the so-called New York rule, an unlicensed person who acts as a broker in the sale of a going business (stock or assets) may recover a commission on the entire transaction unless the sale of real estate is the dominant aspect of the transaction. See *Weingast* v. *Rialto Pastry Shop, Inc.,* 243 N.Y. 113 (1926); *Meyer* v. *Jova Brick Works, Inc.,* 38 A.D.2d 615, 616-617 (N.Y. 1971). In a similar situation, New Jersey allows a business broker to recover a commission for the sale of personal property if the personalty can be separately valued, without regard to its value relative to the realty. See *Kazmer-Standish Consultants, Inc.* v. *Schoeffel Instru-*

In selling the personal property of the dealerships, the broker was not acting as a real estate broker. Section 87RR forbids the collection by one without a license of a fee for services as a real estate broker, that is, for services in selling an interest in real estate. The fact that a sale of real estate is only an incidental part of some other transaction does not matter under § 87RR. An unlicensed broker still is not entitled to collect a commission on the real estate. But § 87RR does not bar the collection of a commission on the sale of personal property. The broker was entitled to go to trial on the question whether it was entitled to a commission on the sale price of the personal property.

This is not a case in which whatever illegality there may have been in the broker's failure to be licensed as a real estate broker should taint the broker's claim to a commission on the sale of the personal property. The broker's omission was relatively minor in view of the fact that it could have easily obtained a license because one of the officers was an attorney. See G. L. c. 112, § 87SS (1986 ed.). The broker's omission had no bearing on performance of the contract, and, if collection of the entire commission is barred, the forfeiture by the broker and windfall to the sellers would be substantial. These are relevant factors in considering the consequences that should attach to nonlicensure. See *Town Planning & Eng'g Assocs.* v. *Amesbury Speciality Co.,* 369 Mass. 737, 745 (1976).

2. We come then to the broker's claim that the sellers should be estopped to deny the broker's right to recover a full commission. The broker's claim is based on its assertion that, when it told a representative of the sellers that it was not a real estate

---

*ments Corp.,* 89 N.J. 286, 293-294 (1982). In deciding that case as it did, the New Jersey court abandoned a rule that denied any commission to an unlicensed broker in the sale of a business. See *Kenney* v. *Paterson Milk & Cream Co.,* 110 N.J.L. 141 (1933). The former New Jersey rule may be the majority rule in this country (see *Moody* v. *Hurricane Creek Lumber Co.,* 290 Or. 729, 738 [1981]; Annot., 82 A.L.R.3d 1139 [1978]), but the count is obscured by the fact that many States, unlike Massachusetts, expressly include the sale of a business within the statutory definition of a broker's activities that must be licensed (see statutes cited in *Kazmer-Standish Consultants, Inc.* v. *Schoeffel Instruments Co., supra* at 291 n.1).

broker, the sellers' representative answered that the absence of a license would not be a problem. The broker claims that the sellers agreed that the sales of the two businesses would be in the form of sales of corporate stock. It further claims that it easily could have obtained, as it now has, a real estate broker's license if it had known one would be needed and that the sellers restructured the sales as sales of assets rather than of stock for the purpose of defeating the broker's commissions.

If the facts are as the broker claims, the sellers would be estopped to deny the broker a full commission. There is, of course, the question whether the broker reasonably relied on the sellers' representations. See *O'Blenes* v. *Zoning Bd. of Appeals of Lynn,* 397 Mass. 555, 558 (1986), and cases cited. But we cannot fairly say that, as a matter of law, on the broker's evidence, the broker's reliance was unreasonable. Our unwillingness to permit § 87RR to bar full recovery of a commission if the broker reasonably relied on the sellers' representations (that the sales would be of corporate stock and that obtaining a real estate broker's license would be unnecessary) is consistent with our view of other statutory provisions in similar circumstances. Thus, in certain circumstances, one who has caused a plaintiff to delay in bringing an action is estopped to rely on the statute of limitations to bar recovery. See *LaBonte* v. *New York, N.H. & H. R.R.,* 341 Mass. 127, 131 (1960); *MacKeen* v. *Kasinskas,* 333 Mass. 695, 698 (1956).

The broker's estoppel claim depends, of course, on its right to collect a full commission if the sales had been of corporate stock. Section 87QQ makes § 87RR inapplicable to one who buys, sells, or otherwise deals in stock. Thus § 87RR's restriction on an unlicensed broker's right to recover a commission on the sale of real estate is inapplicable to an unlicensed business broker's claim for a commission on the sale of stock in a corporation owning an interest in land (as almost all operating corporations must). We observed earlier (see n.5) that the provision in § 87QQ concerning the inapplicability of a § 87RR to sales of stock may have been intended to make clear that for the purposes of obtaining a commission the sale of any or all of the stock in a corporation is not a sale of an interest in land.

3. The summary judgment for the plaintiff sellers is vacated, and the case is remanded to the Superior Court for further consideration.

*So ordered.*

O'CONNOR, J. (dissenting). This case presents the issue whether the defendants, not licensed as real estate brokers, may recover commissions for brokering two transactions. One of the transactions is the sale of an automobile dealership in Cambridge (Agreement I), and the other is the sale of an automobile dealership in Boston (Agreement II). The parties to Agreement I are the plaintiffs Gene's Foreign Car Service, Inc., Eugene F. Looney, John A. Ryan, and James B. Ryan, as sellers, and Nai Nan Ko, as buyer. Agreement I provides for the sale of certain tangible and intangible personal property. It also provides that, at the closing, the individual plaintiffs and the buyer will execute and deliver a lease and option to purchase agreement in specified form covering the real estate on which the dealership is located. The individual plaintiffs are the sole owners of that real estate. Paragraph 7 (c) of Agreement I expressly conditions the buyer's obligation to consummate the transaction on the individual plaintiffs' compliance with their promise to deliver the lease and option agreement.

The parties to Agreement II are the plaintiff, Turnpike Motors, Inc., as seller, and HLT, Inc., as buyer. Both parties' obligations are expressly conditioned on the seller and the buyer's nominee, on or before the closing date, having executed an irrevocable purchase and sale agreement for the real estate on which the dealership is located. A second condition precedent to the buyer's obligation is the delivery of the individual plaintiffs to the buyer's nominee of an option entitling the nominee to purchase an apartment building which is adjacent to the locus of the dealership and is owned solely by the individual plaintiffs. It is perfectly clear from the agreements that each transaction is indivisible, that is, there was no deal without the transfer of real estate.

General Laws c. 112, §§ 87PP and 87RR (1986 ed.), prohibit an unlicensed person from recovering a commission — any commission — for brokering a transaction involving an exchange of real estate. The court has an obligation to apply those provisions to the facts of this case despite any lack of enthusiasm the court may have for the result produced thereby. Section 87PP defines the term "real estate broker" as "any person who for another person and for a fee . . . assists or directs in the procuring of prospects or the negotiation or completion of any agreement or transaction which results or is intended to result in the sale, exchange, purchase, leasing or renting of any real estate . . . ." It is beyond reasonable dispute that the defendants acted as real estate brokers, as defined by § 87PP, in reference to the Cambridge and Boston dealership transactions. Both transactions for which the defendants found prospects for a fee were "intended to result in the sale, exchange, purchase, leasing or renting" of real estate. Section 87RR provides in relevant part that "no person shall engage in the business of or act as a broker or salesman . . . unless he is licensed." The defendants very clearly violated that provision. Section 87RR further provides that "no person shall recover in any suit or action in the courts of the commonwealth for compensation for services as a broker . . . unless he was a duly licensed broker at the time such services were performed." There is no way, then, that a fair application of the law to the facts of this case can result in the defendants' recovering a commission, whether calculated on the combined value of the real estate and personal property involved in the transactions or on the value of the personal property alone. Regardless of how it is calculated, such a commission is for services as a broker, that is, for services in connection with the procuring of prospects to engage in transactions resulting or intended to result in the sale, exchange, or leasing of real estate.

The court sweeps all of this aside by declaring, *ante* at 295, that, "[i]n selling the personal property of the dealerships, the broker was not acting as a real estate broker." The court's assertion is plainly wrong. In selling the personal property of the dealerships, the defendants were indeed acting as real estate

brokers. The reality of the situation is that the sale, exchange, or leasing of real estate was absolutely essential to any contemplated sale of either dealership's personal property. As to each dealership, there is but one integrated and indivisible transaction, and that transaction results, or is intended to result, in the sale, exchange, or leasing of real estate. The provision in § 87RR that an unlicensed person cannot recover for services in bringing about such a transaction should put an end to the fee dispute. Surely, the Legislature could have enacted a statute providing that, in circumstances like the circumstances of this case, a broker shall be entitled only to a reduced commission, one reflecting only the value of the personal property. But the Legislature, for whatever reason, did not choose that course, and the court's duty is to respect that choice.

In support of its holding, the court states that any illegality on the part of the defendants was minor, and that a holding barring recovery would result in a substantial windfall to the plaintiffs. The court characterizes these factors as relevant to any consideration of the consequences that should attach to nonlicensure, *ante* at 295, citing *Town Planning & Eng'g Assocs.* v. *Amesbury Specialty Co.*, 369 Mass. 737, 745 (1976). Those factors are not relevant to the present case because it is not for the court to say what the consequences of nonlicensure should be. The Legislature has spoken to that. Surely, the court is not free to ignore statutorily provided consequences of statutory violations. *Town Planning & Eng'g Assocs.* v. *Amesbury Specialty Co., supra*, does not say otherwise. In that case, the court held that the fact that the person in charge of the plaintiff corporation was not a "professional engineer . . . holding a certificate of registration," as required by G. L. c. 112, § 81R (*f*), did not prevent the corporation from recovering for engineering services it had performed. The court reasoned as follows: "If there was a violation here, it was punishable as a misdemeanor under the statute. Violation of the statute, aimed in part at least at enhancing public safety, should not be condoned. But we have to ask whether a consequence, *beyond the one prescribed by statute,* should attach . . . ." *Id.* at 745 (emphasis added) (footnote omitted). In a foot-

note, *id.* at 745 n.7, the court observed that, in the relevant statute in that case, G. L. c. 112, § 81T, "[t]here is no provision, as in the case of an unlicensed real estate broker (G. L. c. 112, § 87RR), for loss of compensation by one who unlawfully engages in engineering practice."

The court does not stop with the conclusion that the defendants are entitled to go to trial on the question of their right to a commission based on the price of the personal property. Rather, the court concludes that the defendants are entitled to go to trial also on the question whether the plaintiffs are estopped from relying on the statute to bar recovery of a commission based on the price not only of the personal property to be sold but of the real estate to be sold or leased as well. In my view, the application of estoppel principles is entirely inappropriate.

The defendants say that the plaintiffs misled them by representing that no real estate broker's license would be necessary because the deals would be structured as sales of corporate stock, and thus real estate would not be involved. As the court recognizes, *ante* at 296, reasonable reliance is essential to estoppel. *O'Blenes* v. *Zoning Bd. of Appeals of Lynn,* 397 Mass. 555, 558 (1986). It seems clear that the defendants, as a matter of law, could not reasonably have relied on the plaintiffs' alleged representations that the defendants would not require real estate brokers' licenses because of the form of the contemplated transactions. With respect to the Cambridge dealership, the corporate dealer does not own the real estate to be sold. The real estate belongs to the individual plaintiffs, and therefore no transfer of corporate stock would shift control of the real estate to the buyer. The transaction, therefore, clearly depends on a sale or lease of real estate, and the defendants could not reasonably have relied on advice that no broker's license would be required. Similarly, Agreement II, relative to the Boston dealership, was contingent on the delivery by the individual plaintiffs to the buyer of an option to purchase real estate belonging only to those plaintiffs. A sale of corporate stock would not have shifted control of that real estate to the buyer.

Even apart from the fact that both transactions involved the sale, exchange, or leasing of real estate owned by the individual plaintiffs, there is further reason why, despite any contrary representations by the plaintiffs, the defendants reasonably should have known that a real estate broker's license would have been necessary even if the dealership sales were structured as transfers of corporate stock. In *Morad* v. *Haddad,* 329 Mass. 730, 735 (1953), a licensed real estate broker claimed a commission for the sale of a business when the seller elected to effect the transaction as a sale of corporate stock rather than corporate property. This court held that "[t]he transfer of stock by Haddad effected the sale of the corporate property for which Morad had been employed to find a customer. . . . *The sale of all of the stock of the corporation was in legal effect a sale of all its assets,* and the mere fact that the parties found it more convenient to transfer all of the stock rather than to make a conveyance of its assets does not change the substance of the transaction." *Id.* (emphasis added). See *Patsades* v. *Atsales,* 353 Mass. 772 (1968). Despite the plaintiffs' alleged representations about structuring the deals as corporate stock transactions, the defendants could not reasonably have assumed that this court would have declined to follow the lead of the *Morad* case, and, despite the public interest in protecting buyers as well as sellers, would have ignored the substance of the transaction as well as the legislative intent to prohibit the recovery by unlicensed persons of commissions on transactions resulting, or intended to result, in the sale, exchange, or leasing of real estate.

My conclusion that the defendants' position would not have been advanced by the dealership sales being structured as sales of corporate stock does not conflict, it seems to me, with the exception to § 87RR found in § 87QQ. Section 87QQ provides that § 87RR shall not apply to "a person buying, selling or otherwise dealing in any stock, bond or other security. . . ." For the purposes of the real estate broker's licensing statute, a sale of all the stock in a corporation with real estate holdings must be treated not as a stock deal but rather as a sale of all the corporation's assets, as in *Morad, supra.* Section 87QQ

must be construed as referring only to transactions involving less than all the stock in a company. Any other construction would defeat the clear purpose of the licensing statute.

I make one last observation with respect to estoppel. It is, of course, true that a defendant may be found to have waived or be estopped to rely on a statute of limitations defense. A party for whose benefit a statute has been enacted, such as a defendant in a civil case, may relinquish that benefit. It cannot rightly be said, however, that G. L. c. 112, §§ 87PP and RR, were enacted for the sole benefit of sellers of real estate. The court should not permit the public interest sought to be advanced by §§ 87PP and RR to be relinquished or thwarted by representations made by sellers to unlicensed brokers of real estate.

I would remand this case to the Superior Court for the entry of a declaration that the defendant brokers are not entitled to commissions.