**John J. COONEY and F. Dring Wetherill, Appellees–Cross Appellants,**

v.

**Donald W. RITTER, Appellant–Cross Appellee,**

v.

**RITTER TRANSPORTATION, INC., Third Party Defendant.**

**Nos. 90–5580, 90–5733.**

United States Court of Appeals, Third Circuit.

Argued Feb. 5, 1991.

Decided July 26, 1991.

Jeffrey L. Pettit (argued), Phillips and Phelan, Philadelphia, Pa., for appellees-cross appellants.

Edward B. Deutsch (argued), McElroy, Deutsch & Mulvaney, Morristown, N.J., for appellant-cross appellee.

Before MANSMANN AND SCIRICA Circuit Judges, and POLLAK, District Judge *.

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

LOUIS H. POLLAK, District Judge.

In this diversity suit brought in federal court in New Jersey, plaintiffs John J. Cooney and F. Dring Wetherill claimed that defendant Donald W. Ritter owed each of them a commission for having arranged to introduce Ritter to the person who purchased Ritter's business. After a two-day bench trial, the district court found in plaintiffs' favor with respect to the claimed commissions but concluded that plaintiffs were not entitled to an award of pre-judgment interest. From the judgment awarding plaintiffs the claimed commissions, defendant appealed. From the denial of interest, plaintiffs cross-appealed. For the reasons which follow, we conclude that (1) plaintiffs are entitled to commissions, but not as large as the district court awarded; and (2) the denial of prejudgment interest was not warranted.

### I.

*The District Court's Findings of Fact*

The salient facts found by the district court may be quickly summarized:

F. Dring Wetherill and Donald Ritter were acquaintances. In 1982 Ritter told Wetherill that he was interested in selling his New Jersey trucking business, Ritter Transportation Inc., and inquired whether Wetherill had any thoughts about a possible purchaser. Wetherill got in touch with John Cooney, who had considerable experience bringing purchasers and sellers of businesses together. Cooney then met with Ritter to learn more about Ritter Transportation Inc.; in the course of the conversation Ritter said that he would pay Cooney a five per cent commission on a consummated sale of the business. Cooney then approached Richard Kirk, a business man with whom Cooney had prior dealings, with a view to interesting Kirk in buying Ritter's business. Kirk agreed to meet with Ritter. Cooney set up a breakfast meeting in New York for Ritter, Kirk (who

had promised Cooney a commission of $150,000 if the purchase went through) and himself. At the breakfast meeting Cooney told Kirk and Ritter that he was to receive commissions from both sides in the event that Kirk and Ritter made a deal. Meanwhile Cooney and Wetherill agreed to divide equally whatever commissions arose out of the prospective Ritter–Kirk transaction. Ensuing negotiations between Ritter and Kirk—negotiations in which Cooney played no real role (and, evidently, Wetherill played no role at all)—proceeded to the point where a closing was scheduled; but Kirk failed to show. That put the quietus on the 1982 Ritter–Kirk round.

In 1983 Cooney produced another potential purchaser, one Alex Kogan; Kogan made Ritter an offer, but Ritter—to Cooney's dismay—turned it down. Then in 1984 Cooney approached Kirk again and succeeded in re-igniting Kirk's interest in Ritter Transportation Inc. In July of 1985 the deal was done. Kirk's company, WISL Transportation Inc., bought all the shares of Ritter Transportation Inc. for $5,500,-000.

### The District Court's Conclusions of Law

After rejecting Ritter's factual claim that he had not promised Cooney a commission, the district court addressed Ritter's legal claim that, because a significant fraction of the assets of Ritter Transportation Inc. was real estate,[1] Cooney and Wetherill, not being licensed real estate brokers, were barred by the New Jersey real estate brokers' act, N.J.S.A. 45:15–3, from recovering commissions on the sale of the shares in

Ritter Transportation Inc. Section 45:15–3 provides, in relevant part, as follows:

A real estate broker, for the purposes of this article, is defined to be a person, firm or corporation who, for a fee, commission or other valuable consideration, or by reason of a promise or reasonable expectation thereof, lists for sale, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of real estate or an interest therein ... or solicits for prospective purchasers or assists or directs in [sic] the procuring of prospects or the negotiation or closing of any transaction which does or is contemplated to result in the sale, exchange, leasing, renting or auctioning of any real estate....

No person, firm, partnership, association or corporation shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker at the time the alleged cause of action arose.[2]

Plaintiffs argued in the district court (as they argue here) that § 45:15–3 is, for two independent reasons, without application to the Cooney–Wetherill claim against Ritter: *first,* because a sale of stock in a corporation that happens to own some real estate is—as distinct from a sale of some or all of the underlying assets, including the real estate—not a transaction covered by the statute; and, *second,* the Cooney–Wetherill role was confined to finding a purchaser, rather than brokering the deal, and hence

---

1. The district court made no findings as to the value of Ritter Transportation Inc.'s real estate. Moreover, it appears that the present record does not offer a basis for such findings. In the course of its discussion of Ritter's motion for amendment of the findings of fact and conclusions of law, the district court stated that "plaintiffs concede that they *did not* introduce evidence to support an apportionment of the purchase price between real estate and personalty." And Ritter, in his initial brief on appeal, states that "there is no evidence in the record on which to determine that amount [the value of the realty] as plaintiff [*sic*] failed to introduce any proofs of the appropriate valuation of the real estate." P. 24 n. 3.

2. N.J.S.A. 45:15–1 provides:

No person shall engage either directly or indirectly in the business of a real estate broker or salesman, temporarily or otherwise, and no person shall advertise or represent himself as being authorized to act as a real estate broker or salesman, or to engage in any of the activities described in section 45:15–3 of the Revised Statutes, without being licensed so to do as hereinafter provided.

N.J.S.A. 45:15–2 provides:

Any single act, transaction or sale shall constitute engaging in business within the meaning of this article.

falls outside the contemplation of the statute.

The district court rejected the first argument but agreed with the second. Pursuant to its conclusion that § 45:15–3 was no bar to the suit, the district court found that Cooney and Wetherill were each entitled to judgment against Ritter in the sum of $137,500 (fifty per cent of five per cent of the $5,500,000 purchase price). In addition, the district court dismissed, as unsupported by the evidence, counterclaims by Ritter alleging misrepresentations on Cooney's part. Thereafter the district court denied Ritter's motions for amendment of the findings of fact and conclusions of law, or, in the alternative, for a new trial; at the same time, the district court denied plaintiffs' motion for prejudgment interest.

## II.

Ritter has appealed from (1) the judgments entered in favor of Cooney and Wetherill (and from the concomitant denial of his motions to amend the district court's findings of fact and conclusions of law), and (2) the denial of his motion for a new trial.[3] Cooney and Wetherill have cross-appealed from the district court's denial of prejudgment interest.

*Ritter's Appeal*

### A.

■ The first question posed by Ritter's appeal is the correctness of the district court's holding that § 45:15–3 is no bar to the Cooney–Wetherill suit for the reason that Cooney's role was limited to bringing purchaser and seller together. This is a question of law with respect to which our review is plenary.

The district court's conclusions of law # 5 and # 6 were as follows:

5. Cooney acted as a finder, not a broker, because his responsibilities were limited to finding, introducing and bringing the parties together for a deal which they themselves negotiated and consummated. He had no involvement in negotiating the price or any of the other terms of the transaction. *Kaufman, Inc. v. American Machine and Foundry Company,* 102 N.J.Super. 1, 10 [245 A.2d 202] (App.Div.1968). Since a "business broker is one who, for a fee or commission, negotiates the transfer or sale of an ongoing business," *Kazmer–Standish Consultants, Inc. v. Schoeffel Instruments Corp.,* 89 N.J. 286, 290 [445 A.2d 1149 (1982)], Cooney was not acting as a broker and may collect agreed compensation from both Ritter and Kirk.

6. N.J.S.A. 45:15–3 requires a real estate broker's license as a prerequisite to suit for compensation for "offer[ing] or attempt[ing] to negotiate a sale, exchange, purchase or rental of real estate." The services provided by Wetherill and Cooney did not constitute either offering to negotiate or attempting to negotiate the sale of Ritter's business. Accordingly, N.J.S.A. 45:15–3 is not a bar to this suit.

Ritter, in moving to amend the district court's findings of fact and conclusions of law, argued that the court's ruling did not take into account part of the language of § 45:15–3 that covered Cooney's role—"solicits for prospective purchasers or assists or directs [sic] in the procuring of prospects...." Moreover, Ritter pointed out that the contention that the New Jersey statute did not cover a "finder" had been considered and rejected by Judge (now Chief Judge) Gerry in *Baron & Co., Inc. v. Bank of New Jersey,* 504 F.Supp. 1189 (D.N.J.1981). The district court, in denying Ritter's motion to amend, concluded that the holding in *Baron* had been undermined by the subsequent decision of the New Jersey Supreme Court in *Kazmer–Standish Consultants v. Schoeffel Instrument Corp.,* 89 N.J. 286, 445 A.2d 1149 (1982). According to the district court:

In *Kazmer–Standish,* the New Jersey Supreme Court examined the applicability of *N.J.S.A.* 45:15–3 to the activities of a business broker, and concluded that

---

**3.** Ritter's notice of appeal also refers to the district court's dismissal of his counterclaims; but this issue was not developed in Ritter's brief on appeal and will, therefore, be deemed to have been abandoned.

business brokers should be treated differently than unlicensed real estate brokers for purposes of the act. The Court cited legislative history indicating the purpose of the act "is to protect consumers by excluding 'undesirable, unscrupulous and dishonest persons ... from the real estate business.'" *Id.* at 290, 445 A.2d 1149 (citation omitted). The Court stated that "neither the words nor the history of the real estate broker's act indicate that the act was intended to protect businessmen from business brokers." *Id.* at 290–91, 445 A.2d 1149. Under *Kazmer,* a business broker may collect compensation for his role in the sale of a business that includes the transfer of a real estate interest if, according to the terms of the agreement or from surrounding circumstances, that interest is divisible from the remainder of the sale.

Defendant argues that *Kazmer–Standish* merely created a limited exception to the applicability of *N.J.S.A.* 45:15–3 in the context of a business broker suing for a commission on a sale including both personalty and real estate. The above-quoted language from the opinion, however, reflects a relaxation in the application of the act, a recognition that real estate licensing statutes are intended to protect consumers, not businessmen, and that the act was not intended to protect businessmen from business brokers.

*Kazmer–Standish* involved the application of the statute to the activities of a "business broker." The Court defined a "business broker" as "one who, for a fee or compensation, negotiates the transfer or sale of an ongoing business." *Id.* at 290, 445 A.2d 1149. Cooney's involvement in the sale did not rise to this level. Thus, New Jersey courts have not determined the legal effect of *N.J.S.A.* 45:15–3 on the contractual rights of a mere finder in a transaction involving the sale of a business.

The District Court acknowledged that the activities of a "finder" might be found to fall within the letter of § 45:15–3. However, in predicting how the New Jersey Supreme Court would probably respond when confronted with a case like the present one, the district court prophesied that the court, in construing § 45:15–3 not as an exercise in literalism but as a problem of realistic implementation of the dominant legislative purpose, would not regard the minimal activities of a "finder," undertaken in furtherance not of the sale of real estate as such but rather of a business which happened to have some realty among its assets, as within the contemplation of a statute designed to protect purchasers in standard real estate transactions and not sophisticated businessmen engaged in the acquisition of ongoing businesses.

We are of the view that the district court read *Kazmer–Standish* too broadly. It is true that in *Kazmer–Standish,* which was decided in 1982, the New Jersey Supreme Court came to the conclusion that § 45:15–3 had been applied too sweepingly in the previous fifty years. What the court did was to narrow the 1933 ruling of its predecessor, the Court of Errors and Appeals, in *Kenney v. Paterson Milk & Cream Co.,* 110 N.J.L. 141, 164 A. 274 (E. & A.1933). In *Kenney,* the plaintiff, not a licensed real estate broker, sued for a commission to which he claimed he was contractually entitled by virtue of having produced a would-be purchaser of a dairy; because the dairy's assets included some real estate, listed together with other dairy assets in the commission agreement as "property, building, equipment, fixtures, & e," the suit was held by the Passaic County Circuit Court to be barred by § 45:15–3; in a one-sentence *per curiam,* the Court of Errors and Appeals affirmed. In revisiting *Kenney* in *Kazmer–Standish,* which was a consolidation on appeal of two suits for commissions allegedly earned by plaintiff brokers for their roles in facilitating the sales of businesses whose assets included interest in realty, the New Jersey Supreme Court took note that *Kenney* "had been criticized for failing to recognize that real estate licensing acts were intended to protect consumers in the residential housing market, and not businesses." *Kazmer–Standish,* 445 A.2d at 1152. But the court

in *Kazmer–Standish* did not overrule *Kenney* and excise sales of businesses from the statute. Rather, the court refashioned the *Kenney* rule in a manner that retained the *Kenney* principle but ameliorated its perceived inequities:

> Some commentators have interpreted *Kenney* as precluding any commission to an unlicensed broker if the sale of a business includes any real estate.... As indicated, however, *Kenney* permits a broker to recover a commission on the personalty in the sale of a business that also includes real estate if the listing agreement apportions the commission between personalty and realty.
>
> \*   \*   \*   \*   \*   \*
>
> We believe it is appropriate to permit a business broker, although not licensed to sell real estate, to recover a commission on the portion of the sale of an ongoing business attributable to personal property even if the sale includes an interest in real estate. Accordingly, we modify the *Kenney* rule to permit suit on brokerage agreement for a commission on the sale of personalty not only where the personalty is separately evaluated in the brokerage agreement, but also where the valuation appears in the sale agreement or from surrounding circumstances. While brokers would be well advised to spell out separate values in their commission agreements, as *Kenney* would require, failure to do so should not defeat a legitimate claim. It would be unfair to deny an honest broker a commission on the personal property merely because he did not have a real estate license and the listing agreement failed to specify separate values of the realty and personalty. Of course, an unlicensed broker could not recover a commission on the real estate portion of the sale.

*Id.* 445 A.2d at 1151–53.

Nothing in *Kazmer–Standish* suggests that § 45:15–3 should be read as drawing a line that encompasses brokers who facilitate or actively participate in the negotiation process but excludes a broker who, like Cooney, serves wholly or primarily as a "finder" of the purchaser. And such a restrictive reading of § 45:15–3 would, as Chief Judge Gerry made clear in *Baron, supra,* 504 F.Supp. at 1205–06, be in severe tension with the statutory phrase that extends coverage to one who "solicits for prospective purchasers or assists or directs in [*sic*] procuring of prospects."

Furthermore, in *Corson v. Keane,* 4 N.J. 221, 72 A.2d 314 (1950), the New Jersey Supreme Court applied § 45:15–3 to a "finder." The opinion in *Kazmer–Standish* lists *Corson v. Keane* first among cases arising between *Kenney* and *Kazmer–Standish* that have "adhered consistently to the *Kenney* rule without re-examining its underpinning." *Kazmer–Standish,* 445 A.2d at 1152. *Corson v. Keane* is characterized by the *Kazmer–Standish* court as a case in which "unlicensed broker [was] denied 'finder's fee' for introducing mortgagor and mortgagee for construction loan." *Ibid.* Nothing in what was decided in *Kazmer–Standish* touches upon, let alone tends to undercut, the holding in *Corson v. Keane.*[4] Accordingly, we conclude, contrary to the district court, that the fact that Cooney's role was limited to that of a "finder" did not serve to remove his conduct from the ambit of the New Jersey real estate brokers' act.

■ Cooney and Wetherill submit that there is an alternate ground—a ground not adopted by the district court—on which the district court's judgment can properly rest. The alternate ground is that the sale of a corporation whose assets include interests in real estate is not a transaction covered by § 45:15–3 when it is accomplished—as it was in the case at bar—by a sale of the shares of the corporation rather than by a sale of the underlying assets. Cooney and Wetherill place strong reliance on this court's recent holding in *Gruber v. Owens-Illinois Inc.,* 899 F.2d 1366 (3rd Cir.1990)

---

4. Curiously, this pertinent case decided by the New Jersey Supreme Court was not cited by either of the parties in briefing this appeal; moreover, so far as we can determine from a perusal of the materials contained in the Appendix on appeal, it would also appear that the case was not brought to the attention of the district court.

that the Pennsylvania Real Estate Licensing and Registration Act, a statute closely comparable to the New Jersey real estate brokers' act, did not bar an unlicensed broker from recovering a commission on the sale of a corporation that owned some realty when the sale was accomplished by a sale of stock. In so construing the Pennsylvania statute, this court noted that the statute was aimed at "preventing brokers and their employees from gouging, exploiting, and abusing ordinary consumers: the buyers and sellers of homes, condominia, and the like." *Id.* at 1373. Also, this court pointed out that a sale of shares in a corporation does not affect the corporation's title to whatever interests in realty are part of its assets portfolio. Further, this court observed that its construction of the Pennsylvania statute was supported by the Massachusetts Supreme Judicial Court's construction of a comparable Massachusetts statute in *Turnpike Motors Inc. v. Newbury Group, Inc.*, 403 Mass. 291, 528 N.E.2d 1176 (1988) and by the New Jersey Supreme Court's construction of the New Jersey statute in *Kazmer–Standish.*

Since the question in *Gruber* was the meaning of the Pennsylvania statute, what *Gruber* said about the New Jersey statute was dictum, not binding in this case in which the meaning of the New Jersey statute is directly in issue. To the extent that the *Gruber* court read *Kazmer–Standish* as a recognition by the New Jersey Supreme Court that "real estate licensing acts were intended to protect consumers in the residential housing market and not businessmen," *Gruber*, 899 F.2d at 1374, *Kazmer–Standish*, 445 A.2d at 1152, we agree. Nonetheless, *Kazmer–Standish* did not undertake to restrict the New Jersey statute's coverage to transactions involving the residential housing market. Rather, *Kazmer–Standish* announced that sales of businesses would continue to be covered by the statute insofar as such businesses owned interests in realty. To the extent that the *Gruber* court may have surmised that *Kazmer–Standish*'s discussion of sales of businesses augurs a disposition to treat sales of stock differently from sales of assets, we respectfully dis-

agree. Indeed, we think that the language of *Kazmer–Standish* leads to the opposite conclusion.

In *Kazmer–Standish*, the New Jersey Supreme Court began its opinion by announcing that:

> The issue in these cases is whether a broker who does not have a license to sell real estate may recover any commission from the sale of an ongoing business that includes an interest in real estate.

445 A.2d at 1150. Then, after stating the facts in the two cases consolidated on appeal, the court restated the problem to be addressed:

> Here, the question is whether business brokers should be treated like real estate brokers under the real estate brokers' act.

*Id.* at 1151. Whereupon, with a view to elucidating the problem, the court explained what a business broker does:

> A business broker is one who, for a fee or commission, negotiates the transfer or sale of an ongoing business. Although the sale of a business frequently includes valuable real estate, the business broker concentrates on the transfer of the entire business. The transfer of a business can assume many forms, e.g., a sale of assets, including real estate, or the transfer of stock. The transaction may also take many forms, such as a merger, consolidation, acquisition, or divestiture, and the purchase price may be paid in cash, other assets, securities, or other consideration.

*Ibid.*

Having described the various kinds of transactions business brokers arrange or facilitate, the court then pointed out that "[n]either the words nor the history of the real estate brokers' act indicates that the act was intended to protect businessmen from business brokers." *Ibid.* Notwithstanding this—so the *Kazmer–Standish* court went on to observe—the Court of Errors and Appeals had held in *Kenney v. Paterson Milk & Cream Co., supra*, "that a person may not collect any compensation for his role in the sale of a business that

includes the transfer of a real estate interest unless, according to the terms of the commission agreement, that interest was divisible from the remainder of the sale." *Kazmer–Standish*, 445 A.2d at 1151.

Thereupon the *Kazmer–Standish* court, after discussing the substantial criticism which the rigid *Kenney* rule had attracted in the course of half a century, reached its conclusion: The *Kenney* construction of § 45:15–3 was not to be jettisoned, but it was to be relaxed:

> We believe it is appropriate to permit a business broker, although not licensed to sell real estate, to recover a commission on the portion of the sale of an ongoing business attributable to personal property even if the sale includes an interest in real estate. Accordingly, we modify the *Kenney* rule to permit suit on brokerage agreement for a commission on the sale of personalty not only where the personalty is separately evaluated in the brokerage agreement, but also where the valuation appears in the sale agreement or from surrounding circumstances.

*Id.* 445 A.2d at 1152.

In sum, the court's *holding*—that "it is appropriate to permit a business broker, although not licensed to sell real estate, to recover a commission on the portion of the sale of an ongoing business attributable to personal property even if the sale includes an interest in real estate" *ibid.*—is directly responsive to the "issue" posed at the outset of the opinion: "whether a broker who does not have a license to sell real estate may recover any commission from the sale of an ongoing business that includes an interest in real estate." *Id.* at 1150. And in the course of getting from the "issue" to the holding, the court was at pains to identify the various ways in which "the transfer or sale of an ongoing business," can be accomplished:

> Although the sale of a business frequently includes valuable real estate, the business broker concentrates on the transfer of the entire business. The transfer of a business can assume many forms, *e.g.,* a

sale of assets, including real estate, or the transfer of stock.

*Id.* at 1151.

In our view, the foregoing excerpts from *Kazmer–Standish* establish that the New Jersey Supreme Court, in its construction and application of § 45:15–3, regards a sale of assets and a sale of stock as equivalent and interchangeable modes of "sale of an ongoing business." Therefore the Cooney–Wetherill claim for commissions arising from the sale of the stock in Ritter Transportation Inc. is subject to the strictures of § 45:15–3 as elucidated in *Kazmer–Standish*. Cooney and Wetherill can only recover their promised five per cent on so much of the purchase price as is attributable to the personalty of Ritter Transportation Inc. The relative values of the personalty and the realty cannot be determined on this record.[5] Accordingly, the judgment below must be vacated and the case remanded for the taking of further evidence and a consequent recalculation of the commissions owing to Cooney and Wetherill—unless Ritter is correct in his contentions that the district court's judgment in favor of Cooney and Wetherill is flawed in other respects. To those contentions we now turn.

### B.

■ 1. Ritter submits that (entirely apart from the impact of § 45:15–3) the district court erred in using $5,500,000 as the basis for calculating the five per cent commission. The submission is based on (a) Ritter's contention that, pursuant to the Purchase Agreement and the Assignment, Assumption and Amendment Agreement, the $5,500,000 purchase price was subject to certain potential reductions, and (b) Ritter's parallel contention that he has so far only received $2,400,000 as proceeds of the sale of Ritter Transportation Inc. Ritter argues that the district court should have either (1) stayed its calculation of the commissions until the conclusion of ongoing litigation with Kirk which holds some promise of setting the purchase price with finality, or (2) calculated the commissions

5. See note 1, *supra.*

on the basis of the $2,400,000 [6] that Ritter states he has received.

In denying the motion to stay calculation of the commissions, the district court pointed out that Ritter had offered no evidence with respect to the contractual contingencies that might have effectuated a reduction of the purchase price. As to Ritter's submission that he has received only part of the purchase price and that the final determination of what Ritter is to receive must await the conclusion of the litigation with Kirk, the district court ruled: "Post-closing disputes between the seller and the buyer, which are not related to plaintiff's [sic] performance, should not reduce plaintiff's [sic] recovery of the agreed fee."

We think the district court's ruling was correct for the reasons the district court gave.

■ 2. Ritter contends that the district court erred in failing to grant his motion for a new trial. The motion was predicated on the claim that Richard Kirk, if called as a witness, would have given testimony corroborative of Ritter's position that Cooney only represented Kirk and that Ritter never promised Cooney a commission. The district court denied the motion, pointing out that Ritter could have called Kirk as a witness at the trial.

Ritter argues on appeal that "As a literally hostile witness, Kirk's testimony could not realistically be sought by Ritter." [sic]. The apparent thrust of Ritter's argument is that the burden of calling Kirk rested with the district court. We find the argument wholly unpersuasive. Kirk could have been called by Ritter as a hostile witness and his testimony assessed in that light. We think that the district court's denial of the new trial motion was wholly warranted.

*Cooney and Wetherill's Cross-Appeal*

■ Cooney and Wetherill have cross-appealed from the district court's denial of prejudgment interest.

Under New Jersey law an award of interest "is not punitive, *Wilentz v. Hendrickson*, 135 N.J.Eq. 244, 255–256 [38 A.2d 199] (E. & A.1944); ... it is compensatory, to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed." *Busik v. Levine*, 63 N.J. 351, 307 A.2d 571 (1973), *appeal dismissed*, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). As the Supreme Court of New Jersey observed in *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 478, 541 A.2d 1063 (1988), in affirming the Appellate Division's reversal of the trial court's denial of prejudgment interest:

Ordinarily, the trial court has the discretion to grant or deny prejudgment interest. *Fasolo v. Board of Trustees, Div. of Pensions*, 190 N.J.Super. 573, 585 [464 A.2d 1180] (App.Div.1983). It is settled that prejudgment interest may be awarded on contract claims. *Bak–A–Lum Corp. v. Alcoa Bldg. Prods.*, 69 N.J. 123, 131 [351 A.2d 349] (1976). Moreover, the rule that limited prejudgment interest awards to cases where damages were liquidated or clearly ascertainable in advance has been significantly eroded. *Ellmex Constr. Co., Inc. v. Republic Ins. Co.*, 202 N.J.Super. 195, 210 [494 A.2d 339] (App.Div.1985), *certif. denied*, 103 N.J. 453 [511 A.2d 639] (1986). As the Appellate Division noted, "[o]nce the trial judge concluded that plaintiff's rescission of the contract ... was proper ..., the damages awarded were 'capable of ascertainment by mere computation'" (quoting *Rivers v. General Accident Group*, 192 N.J.Super. 355, 359 [470 A.2d 19] (App.Div.1983)).

In declining to award prejudgment interest to Cooney and Wetherill, the district court stated that it did "not find that an award of prejudgment interest would be appropriate in light of the novelty of the legal issues in this case. See *Kislak Company, Inc. v. Geldhazler*, 210 N.J.Super. 255, 509 A.2d 320 (Law.Div.1985)." In *Kislak*, one of the reasons given by the Superi-

---

**6.** Ritter adds that this sum should in turn be reduced by virtue of § 45:15–3; by the value of Ritter Transportation Inc.'s realty.

or Court for not granting prejudgment interest was that "[t]he issues raised by [defendant] Geldhazler in the present case were debatable and, in fact, had not been previously addressed by the courts of New Jersey." *Id.* at 267, 509 A.2d 320. In the present case, by contrast, the law of New Jersey has been clear ever since the New Jersey Supreme Court's decision in *Kazmer–Standish* that a business broker who orchestrates the sale of a business is at least entitled to recover a commission on the personalty portion of the assets of the business. *Kazmer–Standish* was decided in 1982, the year Ritter first mentioned to Wetherill that he would welcome assistance in finding a buyer for Ritter Transportation Inc. The only seriously "debatable" issue in this case was whether, as the district court found, Cooney and Wetherill were entitled to commissions on the entire transaction. Our determination that the district court's award on the merits to Cooney and Wetherill was overly generous should not operate to insulate Ritter from paying prejudgment interest on the lesser amount which, on remand, the district court finds owing. As things stand, Cooney and Wetherill have each "been denied the use of a substantial sum of money for an extraordinary length of time through no fault of his own." *Fasolo, supra,* 190 N.J.Super. at 587, 464 A.2d 1180. We conclude that on remand the district court should award prejudgment interest on whatever sums Cooney and Wetherill are found entitled to by way of commissions.

### Conclusion

We have determined that the judgment in favor of Cooney and Wetherill must be set aside and the cause returned to the district court for recalculation of the commissions owing to Cooney and Wetherill; that recalculation will require a subtraction from the $5,500,000 purchase price (the figure which the district court used as the basis for its calculation of the five per cent commissions) of a sum reflecting the proportion of the value of Ritter Transportation Inc.'s assets properly attributable to realty at the time of the 1985 sale of the business. To whatever amounts the district court finds owing to Cooney and Wetherill as commissions, the district court will add an appropriate award of prejudgment interest. Accordingly, the judgment of the district court will be vacated and the case remanded for further proceedings consistent with this opinion.

SCIRICA, Circuit Judge, dissenting.

I agree with the majority that the district court's proffered distinction between a broker and a mere finder is invalid; and also agree with the majority's discussion of prejudgment interest (although I would extend the award, and therefore would address prejudgment interest on amounts corresponding to the sale of real property), and its discussion of Ritter's further contentions at Section II.B. of the opinion. However, I find this case governed by our reasoning in *Gruber v. Owens–Illinois, Inc.,* 899 F.2d 1366 (3d Cir.1990), and therefore disagree with the majority's conclusion that part of the sale of Ritter Transportation constituted a sale of real estate within the purview of the New Jersey Real Estate Brokers' Act, N.J.S.A. 45:15–3 ("New Jersey Act"). Therefore I respectfully dissent.

In *Gruber,* we interpreted Pennsylvania's Real Estate Licensing and Registration Act, 63 Pa.Stat.Ann. § 455.101 *et seq.* (Purdon 1988) ("Pennsylvania Act"). Like the New Jersey Act, the Pennsylvania Act bars receipt of a commission for the sale of real estate by anyone other than a licensed real estate broker. We held that the Pennsylvania Act did not bar receipt of a commission for a sale of all the stock in a corporation, even though the assets of the corporation included real estate. We reached this result because Pennsylvania law clearly distinguishes between ownership of a corporation's stock and ownership of a corporation's property. 899 F.2d at 1370. We found our conclusion supported by the fact that the Pennsylvania Real Estate Act was clearly intended to protect consumers of residential real estate, not sophisticated commercial purchasers. *Id.* at 1373–74.

I see no reason why *Gruber* should not guide our result today. I have been unable to discern any material difference between either the language or the purpose of the New Jersey Act and that of the Pennsylvania Act. Furthermore, I believe that the New Jersey Supreme Court, no less than the Pennsylvania Supreme Court, would recognize the distinction between ownership of a corporation's stock and ownership of a corporations's property. *See Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir.1988) ("the fundamental proposition[ ] that a corporation is a separate entity from its shareholders"); *Lyon v. Barrett*, 89 N.J. 294, 297, 445 A.2d 1153, 1156 (1982); *Department of Environmental Protection v. Ventron Corp.*, 94 N.J. 473, 500, 468 A.2d 150, 164 (1983). The New Jersey Supreme Court has recognized that the New Jersey Act, like the Pennsylvania Act, is designed to protect purchasers of residential real estate. "Neither the words nor the history of the real estate brokers' act indicates that the act was intended to protect businessmen from business brokers." *Kazmer–Standish Consultants, Inc. v. Schoeffel Instrument Corp.*, 89 N.J. 286, 288, 445 A.2d 1149, 1151 (1982).

I do not believe that *Kazmer–Standish* suggests a different result in New Jersey. That case held that a business broker could not recover a commission on portions of the sale attributable to the sale of real estate. However, the transactions in that case took the form of sales of the corporations' assets, not sales of their stock. *See Kazmer–Standish Consultants, Inc. v. Schoeffel Instrument Corp.*, 177 N.J.Super. 412, 414, 426 A.2d 1061, 1061 (1981), *affd.*, 89 N.J. 286, 445 A.2d 1149 (1982), *Kazmer–Standish*, 89 N.J. at 287, 445 A.2d at 1150. Nothing in that opinion indicates that the New Jersey Supreme Court would extend the Act's prohibitions to sales of stock to a sophisticated purchaser. The majority relies upon the New Jersey Supreme Court's observation that "[t]he transfer of a business can assume many forms, *e.g.*, a sale of assets, including real estate, or the transfer of stock." 89 N.J. at 288, 445 A.2d at 1151. That statement, however, appears as a description of transactions that are not within the Act's central purpose, *id.*, not as an explanation of the types of transactions that bar receipt of a broker's commission. Therefore, I do not find it convincing on this issue.

Rather, I believe *Kazmer–Standish* lends support to the conclusion that Cooney's and Wetherill's receipt of a commission for the entire price is not barred by the Act. As we have noted, in *Kazmer–Standish* the New Jersey Supreme Court held that a business broker is entitled "to recover a commission on the portion of the sale of an ongoing business attributable to personal property even if the sale includes an interest in real estate." 89 N.J. at 289, 445 A.2d at 1152. Under New Jersey law, stock is personal property. *See Martindell v. Fiduciary Counsel*, 133 N.J.Eq. 408, 414, 30 A.2d 281, 285 (1943). Because this transaction took the form of a purchase of stock, the entire purchase price was "attributable to" a sale of personal property. Since I rely on our reasoning in *Gruber*, I do not rest my decision on this ground; but it does indicate that *Kazmer–Standish* does not require a contrary result.