Grafton
No. 86-494

# DeCato Brothers, Inc.

## v.

# Westinghouse Credit Corporation

July 22, 1987

*R. Peter DeCato P.A.*, of Lebanon (*R. Peter DeCato* on the brief and orally), for the plaintiff.

*Cleveland, Waters & Bass*, of Concord (*Craig L. Staples* and *David W. Rayment* on the brief, and *Mr. Staples* orally), for the defendant.

JOHNSON, J. The defendant appeals from the granting of summary judgment to the plaintiff and the denial of its cross-motion for summary judgment by a Master (*Louie C. Elliott, Jr.*, Esq.) approved by the Superior Court (*Smith*, J.). The issue presented is whether the trial court erred in failing to apply the doctrine of accord and satisfaction to bar recovery in this case, notwithstanding its finding that the loan contract did not comply with the requirements of RSA chapter 399-B. We reverse.

In 1982, the plaintiff, a trucking dealership, obtained two commercial loans from the defendant in order to finance its business operations. The first loan was dated August 13, 1982, in

the amount of $80,000, evidenced by a note of the same date calling for repayment of $111,581.76 in sixty monthly installments. The second loan, dated November 20, 1982, totalled $232,880.88, and was evidenced by a note calling for repayment of $295,200 in thirty-six monthly installments.

The loan documents for each loan reflected the principal amount financed, the number of monthly payments, the amount due per month, the length of the obligation, and the total amount due at maturity. The rate of interest was not specifically recited in the notes, however, and neither note contained any provision regarding prepayment.

At some point prior to maturity, the plaintiff found substitute financing with Hanover Bank & Trust Company (Hanover). Hanover contacted the defendant and asked for a "pay-off figure" for discharge of the obligations owed by the plaintiffs. The defendant quoted a pay-off figure of $271,433.92, which represented the remaining principal due plus prepayment penalties calculated under the so-called "Rule of 78's." On August 3, 1983, with the aggregate balance at $315,014.57, the plaintiff, acting through Hanover, tendered to the defendant a check for $271,433.92 with an accompanying letter stating that the amount represented "payment in full for DeCato Bros., Inc. obligation . . . ." The defendant accepted and cashed the check, discharged the plaintiff's notes, and released its security interest in the plaintiff's equipment. Notwithstanding this "settlement," the plaintiff brought suit, seeking to recover all interest paid and the prepayment penalties.

The master's report of November 3, 1986, rejected the defendant's claim of accord and satisfaction, held that the notes violated RSA chapter 399-B, granted the plaintiff's motion for summary judgment, and awarded the plaintiff $49,025.15, plus costs and interest. The damages included all of the interest paid to the defendant, plus the prepayment charge. The defendant appeals.

■■ The proper approach to this case necessarily involves an in-depth inquiry into the doctrine of accord and satisfaction. An accord and satisfaction may properly be defined as "a method of discharging a contract, or setting aside a cause of action . . . by substituting for such contract or cause of action an agreement for the satisfaction thereof and the execution of such subsequent agreement." 1 AM. JUR. 2d *Accord & Satisfaction* § 1, at 301 (1962). The following are the essential elements of an accord and satisfaction: (1) proper subject matter; (2) competent parties; (3) an

assent or meeting of the minds; (4) a consideration. *Rossi v. Stewart*, 90 Ariz. 207, 210, 367 P.2d 242, 244 (1961).

The plaintiff argues that the notes are illegal under RSA chapter 399-B and that, therefore, the loan agreements in this case do not fall within the "proper subject matter" requirement of accord and satisfaction. In addressing this argument, we must discuss RSA chapter 399-B as it relates to this case.

Our threshold question in this regard is whether RSA chapter 399-B applies to commercial borrowers, as opposed to consumer borrowers. We begin with the language of the statute. RSA 399-B:2 provides:

> "Any person engaged in the business of extending credit shall furnish to each person to whom such credit is extended, concurrently with the consummation of the transaction or agreement to extend credit, a clear statement in writing setting forth the finance charges, expressed in dollars, rate of interest, or monthly rate of charge, or a combination thereof, to be borne by such person in connection with such extension of credit as originally scheduled."

RSA 399-B:1, III defines "person" as "any individual, partnership, association, corporation, or unincorporated organization." Thus, the language of the statute on its face appears to contemplate protection for commercial as well as consumer borrowers. Further, RSA 399-B:1, I, defines "credit" as:

> "*any* loan, residential mortgage, deed of trust, advance, or discount; *any* conditional sales contract; *any* contract to sell, or sale, or contract of sale of property or services . . . *any* rental-purchase contract; *any* contract or arrangement for the hire, bailment, or leasing of property; *any* option, demand, lien, pledge, or other claim against, or for the delivery of, property or money; *any* purchase, discount, or other acquisition of, or *any* credit upon the security of, *any* obligation or claim arising out of any of the foregoing; and *any* transaction or series of transactions having a similar purpose or effect."

(Emphasis added.) Although this language may be vaguely descriptive of consumer-related credit transactions, the statute's use of the word "any" compels the conclusion that the legislature intended a broad sweep.

■■ In the absence of legislative history or case law to the contrary, the plain meaning of the statute controls. *See* RSA 21:2; *In re Robyn W.*, 124 N.H. 377, 379, 469 A.2d 1351, 1352 (1983). The fact that virtually all of the case law that has interpreted RSA chapter 399-B has involved consumer borrowers, *see, e.g., Brunelle Aluminum Prods., Inc. v. Caron*, 113 N.H. 730, 313 A.2d 736 (1973); *First Fed. Savings & Loan Ass'n v. LeClair*, 109 N.H. 339, 253 A.2d 46 (1969); *American Home Improvement Co. v. MacIver*, 105 N.H. 435, 201 A.2d 886 (1964), is not controlling. Our task is to discern the legislative intent as derived from the statutory language, *In re Robyn W. supra*, and our analysis compels us to hold that RSA chapter 399-B does apply to commercial borrowers.

The defendant cites *American Home Improvement Co. v. MacIver supra* in support of its contention that the statute does not reach the commercial borrower. In that case, this court noted that "[d]isclosure statutes are designed to inform the uninformed *and this includes* many average individuals who have neither the capability nor the strength to calculate the cost of the credit that has been extended to them." *Id.* at 438, 201 A.2d at 887. Although this language certainly denotes the express *inclusion* of the consumer borrower within the statutory terms, it does not *exclude* the commercial borrower. *American Home Improvement supra* states only that the "uninformed" to whom the protections of RSA chapter 399-B extend includes consumers, leaving open the question whether the commercial borrower is within the class entitled to protection. Thus, the defendant's reliance on this case is unavailing, and we are left with the statutory language as our guide.

We now must consider whether the loan documents in this case are in violation of the disclosure requirements of RSA chapter 399-B. The statute requires a clear statement in writing setting forth the finance charges, expressed in dollars, rate of interest, or monthly rate of charge, or a combination thereof. In this case, the loan documents reflected the principal amount financed, the number of monthly payments, the amount due per month, the length of the obligation, and the total amount due at maturity. The rate of interest was not specifically recited in the notes, however, nor was any explicit "finance charge" specifically stated. Clearly, this is not compliance with the statute.

■ The defendant argues that the rate of interest and its amount in this case could be readily ascertained by simple comparison of the principal amount financed with the face amount of the notes. That this may be so does not vitiate noncompliance

with the statute, and the argument fades in the light of the clear language of the act. *Brunelle Aluminum Prods., Inc. v. Caron,* 113 N.H. 730, 313 A.2d 736, also cited by the defendant, is not like the present case. In *Brunelle,* the credit agreement gave the dollar cost of the loan, which this court held to be "a 'clear statement in writing setting forth the finance charges, expressed in dollars . . . .'" *Id.* at 731, 313 A.2d at 737 (quoting RSA 399-B:2). In the case at bar, however, the loan documents contained no independent figure reflecting the cost of the loan. Thus, lacking is "even a token compliance with the statute." *American Home Improvement, supra* at 437, 201 A.2d at 887.

We next must consider whether the defendant's non-compliance with the disclosure statute renders the contract automatically void, to deprive the defendant of the benefit of its bargain. The question is whether the facts in this case justify our going beyond the criminal sanction of the statute to require the defendant to forfeit its right to payment for the time value of the money it loaned the plaintiff, along with the prepayment penalty.

We note that we are dealing with a technical violation of the statute. This court has held that the fact that a credit transaction runs afoul of RSA chapter 399-B does not necessarily render it void for all purposes. *First Fed. Savings & Loan Ass'n v. LeClair,* 109 N.H. 339, 341, 253 A.2d 46, 48 (1969). As Chief Justice Kenison noted in *American Home Improvement,* 105 N.H. at 438, 201 A.2d at 886, "[t]he law is not always black or white and it is in the flexibility of the gray areas that justice can be done by a consideration of the type of illegality, the statutory purpose and the circumstances of the particular case."

The violation here is punishable as a misdemeanor. Violation of statutes aimed at deterring sharp loaning practices should not be condoned. To decide whether a consequence beyond the one prescribed by the statute should attach, however, we must consider all the circumstances, including:

> "what was the nature of the subject matter of the contract; what was the extent of the illegal behavior; was that behavior a material or only an incidental part of the performance of the contract . . . what was the strength of the public policy underlying the prohibition; how far would effectuation of the policy be defeated by denial of an added sanction; how serious or deserved would be the

forfeiture suffered by the plaintiff, how gross or undeserved the defendant's windfall."

*Town Planning & Eng'r Assocs. Inc. v. Amesbury Specialty Co., Inc.,* 369 Mass. 737, 745–46, 342 N.E.2d 706, 711 (1976). Without engaging in a protracted analysis, we hold that in this case the vector of considerations points in the defendant's favor. Courts should not go out of their way to visit hardship upon parties beyond that which is necessary to uphold the policy of the law. *Nussembaum v. Chambers & Chambers, Inc.,* 322 Mass. 419, 422, 77 N.E.2d 780, 782 (1948). In this case, the statutory violation is not so repugnant as to entitle the plaintiff to a gift of the defendant's services; namely, the free use of a large amount of money for a substantial period of time. As Professor Corbin has noted in the context of licensing statutes:

> "[I]n very many cases the statute breaker is neither fraudulent nor incompetent. He may have rendered excellent service or delivered goods of the highest quality, [and] his non-compliance with the statute seems nearly harmless. . . . Justice requires that the penalty should fit the crime; and justice and sound policy do not always require the enforcement of licensing statutes by large forfeitures going not to the state but to repudiating [parties]."

6A A. L. CORBIN, CORBIN ON CONTRACTS § 1512, at 713 (1962). We find this reasoning applies in the present context, and hold that the notes in this case were properly the subject of an accord and satisfaction between the parties.

 Finally, we simply cannot accept the plaintiff's contention that a case involving a technically illegal contract cannot be "settled" by the parties. Plaintiff conceded at oral argument that the parties could "settle" the case upon leaving the Supreme Court chamber. We see no reason why they could not have done so in advance of the litigation, in a binding fashion. Allowing private parties to settle their claims among themselves short of litigation is certainly consistent with public policy. The defendant remains subject to the statutory sanction. Case law "warn[s] against the sentimental fallacy of piling on sanctions unthinkingly once an illegality is found." *Town Planning, supra* at 746, 342 N.E.2d at 711.

■ The only remaining issues raised concerning the existence of an accord and satisfaction in this case relate to the requirements of mutual assent and consideration. The mutuality of assent requirement is well described in *State Farm v. Fordham*, 148 Ga. App. 48, 52, 250 S.E.2d 843, 846 (1978), in which the court noted:

> "If a debtor tenders a sum of money less than the amount claimed upon the condition, express or implied, *that it satisfied the entire debt*, and the creditor accepts the tender, an accord and satisfaction results. . . . The compromise, or mutual accord and satisfaction, is binding on both parties. . . . However, to make it binding, there must be a meeting of the minds as to the subject matter embraced in the agreement."

(Emphasis in original.)

■ The plaintiff argues that no mutual assent occurred in this case because the "payoff figure" did not disclose the fact that it included a prepayment penalty. We reject this argument. Pressed to its logical extreme, the plaintiff's position would require contracting parties to disclose detailed breakdowns of price terms before a "meeting of the minds" could arise. Further, the plaintiff has no right to assume that the "pay-off figure" would not include a prepayment penalty. The notes themselves made no reference to a right to prepay. Generally, absent manifest injustice, an instrument is payable in full according to its tenor, and the maker has no right to prepay in the absence of an express provision providing for prepayment. *See Fuller Enterprises v. Manchester Savings Bank*, 102 N.H. 117, 120, 152 A.2d 179, 181 (1959).

■ In this case, the offer and acceptance is clearly on the record. The absence of extended "give and take" negotiation is unimportant. Hanover, acting on behalf of the plaintiff, asked for a pay-off figure to discharge the notes. The defendant responded with a definitive pay-off figure of $271,433.92. The plaintiff, acting through its agent, Hanover, tendered a check for this amount, along with a letter stating that it represented "payment in full for DeCato Bros., Inc. obligation to you." The defendant accepted this "offer" and, in consideration therefor, discharged the plaintiff from its remaining obligations and released its security interest in the plaintiff's business equipment. This is "classic" accord and satisfaction, and the trial court erred in failing to so find. *See Post*

*Road Realty, Inc. v. Zee-Bar, Inc.*, 117 N.H. 136, 138, 370 A.2d 282, 284 (1977); *Hackett v. Railroad*, 95 N.H. 511, 514, 67 A.2d 340, 341–42 (1949).

*Reversed.*

BATCHELDER, J., did not sit; the others concurred.