**In re Jeffrey A. and Joanne D. RUNGE, Debtors.**

**Tom COLLENGE, d/b/a American Heritage Painting and General Maintenance, Doyle Lumber Co., Inc., Clark Electric, and Lawrence R. White, d/b/a Traditional Crafts II, Plaintiffs,**

**v.**

**Jeffrey A. and Joanne D. RUNGE, Defendants.**

**Bankruptcy No. 97–13754–MWV.**

**Adversary No. 98–1003–MWV.**

United States Bankruptcy Court, D. New Hampshire.

Oct. 26, 1998.

Geraldine Karonis, Assistant U.S. Trustee, Manchester, NH, for UST J. Christopher Marshall.

Marc W. Mc Donald, Normand & Shaghnessy, PA, Manchester, NH, for Jeffrey Runge and Joanne Runge.

Charles A. Russell, Concord, NH, for Clark Electric, Doyle Lumber Co., Inc., Lawrence R. White and Tom Collenge.

Jeffrey Schreiber, Schreiber & Associates, Danvers, MA, Trustee.

### MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it a motion for summary judgment filed by Jeffrey A. and Joanne D. Runge ("Defendants") against Tom Collenge, d/b/a American Heritage Painting and General Maintenance, Doyle Lumber Co., Inc., Clark Electric, and Lawrence R. White, d/b/a Traditional Crafts II ("Plaintiffs"). For the reasons that follow, the Court grants the Defendants' summary judgment motion.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### Procedural History

The Defendants, on Schedule F of their bankruptcy petition filed October 8, 1997, listed the following disputed debts belonging to the Plaintiffs herein: $32,000 to Doyle Lumber Co., Inc.; $50,000 to Lawrence White, d/b/a Traditional Crafts II; $6,000 to Steve Clark, Clark Electric; and $6,000 to Tom Collenge, d/b/a American Heritage Painting and General Maintenance. Defs.' Bankruptcy Pet., Schedule F. A discharge was granted to the Defendants on January 23, 1998. On January 9, 1998, the Plaintiffs filed this adversary proceeding [1] seeking to except $74,000 from the Defendants' discharge. Specifically, the complaint alleged the following debts for each Plaintiff should be excepted from discharge pursuant to section 523(a)(2) and (a)(4) of the Bankruptcy Code: Tom Collenge, $6,000; Doyle Lumber Co., Inc., $15,000; Clark Electric, $3,000; and Lawrence R. White, $50,000. Pls.' Compl. at 4, ¶ 19. The Defendants answered the Plaintiffs' complaint on February 17, 1998, denying the allegations and asserting eleven affirmative defenses.

On April 20, 1998, the Defendants then moved to dismiss the adversary proceeding for failure to state a claim. The Court, on May 26, 1998, dismissed Counts III, IV, and V of the Plaintiffs' complaint, and dismissed all Plaintiffs but Lawrence R. White from Count II. Therefore, Count I remains in its entirety, and Count II remains only with respect to Plaintiff Lawrence R. White ("White").

The Defendants then filed a motion for summary judgment against the Plaintiffs on these remaining two counts on June 25, 1998, to which the Plaintiffs objected on July 27, 1998. On August 11, 1998, the Defendants filed a response to the Plaintiffs' objection.

### Facts

Certain facts, which are not in dispute, are as follows. On or about November 13, 1994, the Defendants and White, a general contractor, entered into an agreement whereby White was to build a house for $165,000 at 38 Quail Hill Road in Chester, New Hampshire, for the Defendants. Mot. for Summ. J. at 5. The Defendants received a real estate and construction loan for approximately this amount from Salem Five Mortgage Company ("Salem"). The Defendants then opened an account into which these funds were deposited.[2] The account was labeled "Traditional Crafts II," the name of White's d/b/a, but only the Defendants had signature rights and the rights to withdraw funds. Mot. for Summ. J. at 2, ¶ 10. Finally, Lawrence White, d/b/a Traditional Crafts II, subcontracted with the Plaintiffs Tom Collenge, d/b/a American Heritage Painting and General Maintenance, Doyle Lumber Co., Inc., and Clark Electric ("Plaintiff Subcontractors").

### DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(c), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c) (1997). "Genuine," in the context of Rule 56(c), means that "the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party . . . ." *Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 36 (1st Cir.1993) (internal quotation marks and citations omitted). "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993). Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

---

1. The Plaintiffs amended their complaint on January 23, 1998,—to correct typographical changes.

2. The Plaintiffs assert that this account was opened at the Plaistow Cooperative Bank. Pls.' Obj. to Mot. for Summ. J.

## A. Count I: § 523(a)(2)(A).

The Plaintiffs' complaint alleges that pursuant to section 523(a)(2), the Defendants falsely represented they would pay the Plaintiffs for building their home. Although the Plaintiffs' complaint does not specify what subsections of section 523(a)(2) apply, this Court takes judicial notice that the Plaintiffs have not asserted that the Defendants committed fraud under the acts required by section 523(a)(2)(B). *See* 11 U.S.C. § 523(a)(2)(B) (1988). Therefore, the Plaintiffs' complaint, as alleged, falls under section 523(a)(2)(A). *See* 11 U.S.C. § 523(a)(2)(A) (1988).

The Plaintiffs' complaint first states that "Tom Collenge, d/b/a American Heritage Painting and General Maintenance, provided paint and painting services to the Debtors in the construction of their house. The Plaintiff, Doyle Lumber Co., Inc., provided the lumber to construct the house. The Plaintiff, Clark Electric, provided electric fixtures and serves [sic] to Debtors." Pls.' Compl. at 4, ¶ 18. The complaint then alleges that (1) the Defendants did not fully pay the Plaintiff Subcontractors; (2) the Defendants falsely represented they would pay for the work with funds provided to them by Salem; Pls.' Compl. at 4–5; and (3) the parties had an extended agreement for additional services to the Defendants' home beyond the scope of the original contract, Pls.' Compl. at 4, ¶ 20.

With regard to the Plaintiffs' assertion that the contract was modified, the Plaintiffs, in their objection to the Defendants' summary judgment motion, stated that the Defendants originally applied for a $195,000 loan, were denied that loan amount, and later received a $165,000 loan. *See* Obj. to Defs.' Mot. for Summ.J. ¶ 3. Moreover, the Plaintiffs allege that since the loan was only for $165,000, the Defendants and Plaintiffs agreed that the Defendants would pay the Plaintiffs an additional $30,000 to complete their home as they originally envisioned. *See* Obj. to Defs.' Mot. for Summ. J. (Plaintiffs alleged there was an oral agreement before the contract was signed that Plaintiff

White would build the Defendants house for $195,000, and the difference would be paid from the Defendants' income and resources). The Plaintiffs allege that although they completed $195,000 worth of work on the Defendants' house, the Defendants have, to date, paid only approximately $165,000. Thus, the Plaintiffs allege that a genuine issue of material fact, that the Plaintiffs are still owed money for their work and materials, remains in dispute. Obj. to Mot. for Summ.J. at 6, ¶ 32.

The Defendants counter that there was no oral agreement to pay $195,000; rather, the contract, which states that modifications must be in writing, provided that the Defendants would pay the Plaintiffs $165,000. The Defendants further assert that they have paid the $165,000 to the Plaintiffs. In addition, the Defendants assert that the Plaintiffs may not use parol evidence to establish that the contract was modified orally to one for $195,000 when the contract requires modifications to be in writing. *See* Defs.' Mot. for Summ.J., Exh. B, at 2 (paragraph 5, "Change Orders," states that "[a]ll such changes in the Work ... shall be determined by mutual agreement evidence by written change order ("Change Order") signed by the Buyer and the Contractor"). Finally, the Defendants state they tendered a check for $1,562, cashed by White, which contained the notation "final payment." [3] Beyond averring that the Defendants committed no fraud under section 523(a)(2)(A), they also maintain that this final payment constitutes an accord and satisfaction sufficient to nullify the Plaintiffs' claim under section 523(a)(2) since there is no debt remaining.

The Court agrees with the Defendants that, under the doctrine of accord and satisfaction, the Defendants have paid their debt to the Plaintiffs; therefore, no debt remains, and the Plaintiffs' complaint fails under section 523(a)(2)(A).

### 1. Accord and Satisfaction.

The New Hampshire Revised Statues Annotated section 382–A:3–311 defines accord and satisfaction as follows:

the Defendants' account to White.

---

**3.** Exhibit J is a copy of the Defendants' check number 1085 for $1,562, which was written off

(a) If a person against whom a claim is asserted provides that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.

(b) Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

(c) Subject to subsection (d), a claim is not discharged under subsection (b) if either of the following applies:

.... [ (1) is inapplicable]

(2) The claimant, whether or not an organization, proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This paragraph does not apply if the claimant is an organization that sent a statement complying with paragraph (1)(i).

(d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

N.H.REV.STAT.ANN. § 382–A:3–311 (1994).[4]

The Court first finds that the requirements in subsection (a) have been met. First, the Court finds that the Defendants tendered the check to the Plaintiffs in good faith and "as full satisfaction of the claim." § 3–311(a). The Defendants provided White with a check and a letter, both of which stated that the check was tendered as a final payment. Exh. J. Second, the Court finds

that the Plaintiffs' claims are "unliquidated or subject to a bond fide dispute." § 3–311(a). The Defendants listed the claims on Schedule F of their petition as being in dispute. *See* Defs.' Bankruptcy Pet., Schedule F. Third, the Court finds that the Plaintiffs "obtained payment of the instrument." § 3–311(a). The check the Defendants tendered was mailed to White, who cashed the check.

Moving on through the statutory requirements, subsection (b) provides that the claim is discharged if the Court finds that either the check or the letter contains a conspicuous statement that either were tendered as full satisfaction of the claim. § 3–311(b). Before looking to whether any exception in subsection (c) applies, the Court first notes that, under subsection (b), the kind of statement required is a "conspicuous" statement. *Id.* "Conspicuous" is defined in section 1–201 of the New Hampshire Uniform Commercial Code as follows:

(10) "Conspicuous": A term of clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.

N.H.REV.STAT.ANN. § 382–A:1–201 (1994).

■ The Court finds that the letter which accompanied the check that the Defendants proffered to the Plaintiffs constitutes a "conspicuous" statement sufficient for a reasonable person to have noticed that the check was tendered as a final payment. First, the letter states that

Pursuant to our phone conversation today, you are aware that I represent Jeff and Joanne Runge.

Enclosed, you will find a check in the amount of $1,562.00, which represents the final payment on the contract for the house

4. Although neither party mentioned the Uniform Commercial Code, the Court finds that it applies

in this case.

you built for the Runge's. As you are aware, the contract price for the house was $150,000.00 plus extras in the amount of $15,000.00, for a total of $165,000.00. Upon receipt of this check, the Runge's will have paid the full $165,000.00 contract price.

Would you kindly contact your subcontractors and supplies and inform them that you have been paid in full under the terms of the contract and further request that they stop contacting the Runge's directly with regard to outstanding bills.

Defs.' Mot. for Summ. J., Exh. J. The letter was written directly to White by the Runge's attorney, Lawrence A. Buswell, Jr., and is dated September 11, 1995. Exh. J. Second, the word "Enclosure" is written at the bottom of the letter, which refers to a check which was mailed with the letter, also dated September 11, 1995. Exh. J. The check, which was actually for $1,562.03, contains a notation on the front of the check, which states "Final Payment." Exh. J. Clearly, both the letter and the check are sufficient to put a reasonable person on notice that the check was tendered as a final payment. *See Gannett v. Merchants Mut. Ins. Co.*, 131 N.H. 266, 552 A.2d 99, 101 (1988) ("By cashing on a check tendered on the express and unambiguous condition that the payment would constitute full satisfaction of Merchants' obligation ... she [Gannett] was bound by that condition.") (internal citations omitted). Similarly, in *DeCato Bros., Inc. v. Westinghouse Credit Corp.*, 129 N.H. 504, 529 A.2d 952 (1987), the New Hampshire Supreme Court stated:

An accord and satisfaction may properly be defined as "a method of discharging a contract, or setting aside a cause of action ... by substituting for such contract or cause of action an agreement for the satisfaction thereof and the executing of such subsequent agreement." 1 AM.JUR.2D *Accord and Satisfaction* § 1, at 301 (1962).

. . . .

The plaintiff, acting through its agent, Hanover, tendered a check for this amount, along with a letter stating that it represented "payment in full for DeCato Bros., Inc. [sic] obligation to you." The

defendant accepted this "offer," and in consideration therefor, discharged the plaintiff from its remaining obligations and released its security interest in the plaintiff's business equipment. This is a "classic" accord and satisfaction, and the trial court erred in failing to so find.

*Id.*, 529 A.2d at 953, 956; *Harrison v. Gooden*, 439 F.2d 1070, 1071 (1st Cir.1971) (finding an accord where a party accepted a settlement offer, but no satisfaction because "[b]efore the payment was received to complete the satisfaction Harris revoked the accord"); *Northeast Community Dev. Group v. Federal Deposit Ins. Corp.*, 948 F.Supp. 1140, 1154 (D.N.H.1995) (Court did not cite to the New Hampshire Uniform Commercial Code, but did note that an accord and satisfaction requires "(1) proper subject matter; (2) competent parties; (3) an assent or meeting of the minds; [and] (4) a consideration.") (*citing* to *DeCato Bros., Inc. v. Westinghouse Credit Corp.*, 129 N.H. 504, 529 A.2d 952, 953 (1987)).

■ The Court also notes that White wrote language to the effect that the check was not full payment of his claim; however, White's scribbled notes do not nullify his acceptance of the check as a final payment.

In addition, the Defendants did not contract with the Plaintiff Subcontractors, but only with White. *See* Defs.' Mot. for Summ. J., Exh. B ("Building Contract" between Jeffrey and Jodi Runge and Lawrence White). Although Exhibits G, H, and I show payments made directly to the Plaintiff Subcontractors, no evidence even remotely shows that the Defendants contracted with the Plaintiff Subcontractors—indeed, this Court has dismissed the Plaintiff Subcontractors' claims under Count II. *See* Defs.' Mot. for Summ. J., Exhs. G, H, and I.

Finally subsection (c)(2), the final applicable subsection here, does not work any exception on the Plaintiffs' claims. *See* § 3–311(c). The $1,562 was not returned to the Defendants within ninety days after it was paid.

Finally, Exhibits G and H to the Defendants' summary judgment motion show in detail that the Defendants paid the full con-

tract price. *See* Defs.' Mot. for Summ. J., Exhs. G and H. Exhibit G shows numerous payments, approximating $155,628.36, made on the Defendants' account to various subcontractors, themselves, utility companies, and building supply stores. *See* Exh. G. The checks, statements, receipts and notations in Exhibits G and H show that the Defendants disbursed all of the construction funds in building their home. *See* Exhs. G and H (Exhibit H shows approximately $7,054.64 disbursed towards construction); *see also* Exhibits I and J (showing additional and final payments made under the construction contract).

In sum, the Court holds that the Defendants' defense of accord and satisfaction sufficiently merits granting summary judgment in their favor. Since the debt was paid, there is no claim under section 523(a)(2)(A). The Court also finds that there is no material fact in dispute with regard to whether the contract was one for $195,000 or $165,000. If White disagreed that the debt, as he saw it, was paid, he should not have accepted the Defendants' check as final payment.

B. *Count II against White: § 523(a)(4).*

The complaint alleges that pursuant to section 523(a)(4) of the Bankruptcy Code, *see* 11 U.S.C. § 523(a)(4) (1988), the Defendants committed fraud and/or defalcation while acting in a fiduciary capacity "by misapplying funds which should have been paid to Plaintiffs." Pls.' Compl. at 6, ¶ 30. More specifically, the complaint alleges that the Defendants had a fiduciary duty to White, d/b/a Traditional Crafts II, "in the distribution of payments to Plaintiff Subcontractors on behalf of the Salem Bank. The Debtor [sic] had a fiduciary duty to three Plaintiff Subcontractors." Pls.' Compl. at 3, ¶ 12. Also, the Plaintiffs' objection to the Defendants' motion for summary judgment contends that the Defendants acted as White's agents and owed a fiduciary duty to White since his trade name was printed on their checks. Obj. to Mot. for Summ. J. at 5, ¶ 26.[5] Therefore, the Plaintiffs contend that a genuine

issue of material fact, that a fiduciary relationship existed between the Defendants and White, is in dispute. Obj. to Mot. for Summ. J. at 5, ¶ 28.

■ Section 523(a)(4) of the Bankruptcy Code states that a debt incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[,]" § 523(a)(4), is excepted from a debtor's discharge. Therefore, the first element that must be established is that the person, or as here, the Defendants, were fiduciaries under the meaning of section 523(a)(4) of the Bankruptcy Code. The Court finds that they were not.

■ Section 523(a)(4), as with all other discharge statutes, is construed narrowly to further the fundamental policy of the Bankruptcy Code to provide debtor with a fresh start. Therefore, the term "fiduciary" has a narrow definition. *See BAMCO 18 v. Reeves (In re Reeves)*, 124 B.R. 5, 7–8 (Bankr. D.N.H.1990) (*citing Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); 3 COLLIER ON BANKRUPTCY § 523.05A; *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915) and *In re Tinkham*, 59 B.R. 209, 217 (Bankr.D.N.H.1986), among other cases); *see also Reilly v. Beeman (In re Beeman)*, 225 B.R. 522 (Bankr.D.N.H. 1998); *M–R Sullivan Mfg. Co., Inc. v. Sullivan (In re Sullivan)*, 217 B.R. 670 (Bankr. D.Mass.1998) (the term "fiduciary" is defined narrowly). Further, the definition of "fiduciary" is limited to a relationship involving either an express or a technical trust, and "not trusts that are imposed by law as a remedy." *M–R Sullivan Mfg. Co., Inc.*, 217 B.R. at 674 (internal citation omitted); *see Ducey v. Doherty (In re Ducey)*, 160 B.R. 465 (Bankr.D.N.H.1993) (finding attorney had a fiduciary duty in holding his clients' retainer).

■ In the case at bar, the Defendants and the Plaintiffs did not establish an express trust. Therefore, in order to find a fiduciary relationship, the Court must deter-

---

**5.** The objection also asserts that the Defendants violated their fiduciary duty to the Plaintiff Subcontractors by failing to pay them, *see* Obj. to Defs.' Mot. for Summ. J. at 5, ¶ 27, but Count II was dismissed with respect to all the Plaintiffs except for White, and White has no standing to assert the Plaintiff Subcontractors' claims.

mine whether a technical trust existed between the parties. A technical trust is "a trust that is imposed by law and may arise either by statute or common law.... Courts have consistently considered state law relevant in determining whether a technical trust relationship exists for purposes of the Bankruptcy Code." *M–R Sullivan Mfg. Co., Inc.,* 217 B.R. at 675. Further, the trust must exist prior to the act creating the debt. *Kwiat v. Doucette,* 81 B.R. 184, 188 (D.Mass. 1987) (*citing Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934)).

 First, the Plaintiffs have provided no evidence as to whether and at what time the fiduciary relationship arose. Although the Plaintiffs contend that the fiduciary relationship arose as a result of both the Defendants opening a checking account with White's trade name, and that the Defendants paid the Plaintiff Subcontractors, *neither of these facts,* even taken in the light most favorable to the Plaintiffs, is sufficient to create a fiduciary duty on the Defendants.

Second, there is no New Hampshire statute governing whether a fiduciary duty exists in situations similar to the case at bar— where a person employs a contractor and holds home construction funds loaned by a bank in a separate account. *See Stowe v. Bologna (In re Bologna),* 206 B.R. 628 (Bankr.D.Mass.1997) (Massachusetts statute governed deposits given by a tenant to his debtor/landlord). This situation is not one where an attorney holds his clients' retainer, *see Ducey v. Doherty (In re Ducey),* 160 B.R. 465 (Bankr.D.N.H.1993), but is merely one where the money was loaned directly to the Defendants by Salem to build their home. *See also* N.H.REV.STAT.ANN. § 382–A:3–307 (1994) ("fiduciary" is defined as an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument); *Wittman v. Potter (In re Potter),* 88 B.R. 851, 853 (Bankr.N.D.Ill.1988) (Court rejected the plaintiffs' argument that the debtor had a fiduciary duty to segregate their funds and held that no express or technical trust existed under section 523(a)(4) where the debtor/architect received funds from her clients

to build a home). It is true that the Defendants owed a duty to the Plaintiffs, but that duty was to pay them under the contract, and that is all. The Defendants were not holding money that belonged to White. Rather, it belonged to them: the money was loaned by Salem to the Defendants, not to White or any of the other Plaintiff Subcontractors. Therefore, the Court holds that the Defendants were not fiduciaries under the narrow definition of the term in section 523(a)(4) of the Bankruptcy Code.

Therefore, for all the aforementioned reasons, the Defendants' motion for summary judgment is granted in its entirety. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal rule of Procedure 7052. The Court will issue a final judgment consistent with this opinion.