ANTHONY J. PANDISCIO, trustee,[1] *vs.* MARK ATKINSON
& another,[2] trustees.[3]

No. 00-P-289.

Worcester. February 8, 2002. - April 11, 2002.

Present: PERRETTA, COWIN, & DOERFER, JJ.

*Contract,* Settlement agreement. *Interest. Usury.*

A settlement agreement arising from a dispute over whether a promissory note
related to the purchase of real property was accelerated and whether a right
to a prepayment penalty was lost was not illegal and voidable on the
ground that the prepayment penalty included in the settlement amounted to
a required payment of usurious interest, where the settlement, which was a
lump sum for a compromise amount and did not characterize the disputed
items as principal, interest, prepayment, or the like, was not illegal on its
face, and where there was no good public policy reason to allow the
plaintiff to inject a theory of usurious interest late into a dispute that all the
parties had resolved in good faith. [486-487]

CIVIL ACTION commenced in the Superior Court Department on
June 22, 1998.

The case was heard by *S. Jane Haggerty,* J., on motions for
summary judgment.

*Darragh K. Kasakoff* for the plaintiff.

*Laura A. Mann* for the defendants.

DOERFER, J. This case arises out of a dispute between the par-
ties over amounts due under the terms of a promissory note
which had a clause prohibiting prepayment for five years. The
plaintiff took the position that the defendants, CBG Nominee
Trust (CBG), had accelerated the note and lost their right to a
prepayment penalty. In the circumstances described below, the
parties entered into a settlement agreement. The plaintiff

---

[1] Of the Vincenzo Trust.

[2] Paul Choffi, a/k/a Paul Cioffi.

[3] Of the CBG Nominee Realty Trust, a/k/a the CBG Nominee Trust.

subsequently claimed that the amounts payable under the settlement agreement amounted to interest on the note at a rate that violated the criminal usury statute, G. L. c. 271, § 49, and thus made the obligation voidable. He refused to pay that part of the settlement amount which he regarded as a payment of usurious interest and brought this action seeking a declaration of his rights, and other relief. The plaintiff appeals from a judgment of the Superior Court upholding the settlement agreement and awarding the amount due thereunder to CBG. We affirm.[4]

*The undisputed material facts.* The plaintiff purchased commercial real estate from CBG on May 5, 1997. He gave CBG a promissory note in the amount of $150,000. The note carried interest at ten percent per year on the unpaid balance and contained a prepayment penalty clause as follows:

> "Maker and any other party liable herefor may prepay this Note in full or in part time [*sic*] upon thirty (30) days' prior notice without premium or penalty except that prepayment may not be made until May 5, 2001."

The note also provided that the borrower would be in default for failure to pay any installment or any other payment required to be paid under any of the loan documents, including the mortgage given to secure the note, within fifteen days of its due date.

The mortgage securing the note required the borrower to pay all real estate taxes, and stated:

> "If the Mortgagor is in default of this Mortgage as herein defined, then all Obligations secured hereunder shall become due at the option of the Holder . . . ."

On or about November 24, 1997, CBG sent a demand letter to the plaintiff demanding that real estate taxes on the property which were in arrears be paid within fifteen days. No other demands, including any notices explicitly accelerating the

---

[4]We do not review those aspects of the judge's ruling that addressed the merits of the underlying dispute between the parties.

amounts due under the note, were ever sent to the plaintiff by CBG. The plaintiff made no further payments on the note after December of 1997. He also abandoned the property.

After the plaintiff failed to cure the default, CBG made a peaceable and unopposed entry on the property on February 26, 1998, and recorded a notice of entry thereof pursuant to G. L. c. 244, § 2. CBG also filed a "Complaint to Foreclose Mortgage" in the Land Court on March 13, 1998, and, on May 5, 1998, obtained a judgment thereunder authorizing them to make an entry and sell the property. No further steps were taken to exercise a power of sale under the mortgage or otherwise foreclose the mortgage.

The plaintiff found a buyer for the property, Joseph DeCarolis (buyer), in March, 1998. In connection with their negotiations for the sale of the property, the plaintiff requested a "payoff figure" from CBG. In response, CBG sent plaintiff a letter, dated April 30, 1998, setting forth the principal outstanding on the note, listing certain other fees, and stating that interest was due in the amount of $57,286.82. This interest was calculated by applying the rate of interest specified in the note, ten percent, to the unpaid principal up to the date upon which plaintiff would be entitled to prepay the note, May 5, 2001, plus the interest that was in arrears.

*The underlying dispute.* The plaintiff took the position that no prepayment penalty was due because CBG had accelerated the note by (1) demanding all interest due under the note in response for his request for a payoff figure, and (2) taking the step of making a peaceable entry, recording a notice thereof, and commencing a Land Court action to establish that foreclosure was not prohibited by the Federal Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.App. §§ 501 et seq. He thus resisted paying a prepayment penalty, adopting the reasoning of *Ferreira* v. *Yared*, 32 Mass. App. Ct. 328, 330 (1992), relating to the effect of acceleration on the enforceability of a prepayment clause in a note. CBG claimed they had not accelerated the note by taking these steps, relying on such cases as *Wilshire Enterprises, Inc.* v. *Taunton Pearl Works, Inc.*, 356 Mass. 675, 678 (1970) (pursuant to mortgage clause, noteholder must perform a positive act, a decision to accelerate), and *Shane* v.

*Winter Hill Fed. Sav. & Loan Assn.*, 397 Mass. 479, 482-484 (1986) (notice of entitlement to accelerate may not actually constitute an acceleration). For several weeks, the parties negotiated over the amounts needed to induce CBG to discharge the mortgage so that the proposed sale could go through.

The buyer operated an insurance agency and required zoning relief in order to make use of the property, and the consummation of the purchase and sale depended on zoning relief being made. The local zoning board deferred action on the requested zoning change until they could ascertain whether CBG and the plaintiff had resolved their differences such that the sale could go through.

*The settlement agreement.* While represented by counsel, the plaintiff, CBG, and the buyer negotiated a written letter agreement (Agreement) resolving their dispute. The purchase and sale agreement between the plaintiff and the buyer was renegotiated to increase the price. The Agreement provided for the payment by the plaintiff to CBG of $191,000 "in full satisfaction of the mortgage debt" and the transfer of certain restaurant fixtures and ventilation equipment to CBG.

CBG appeared at the hearing before the zoning board and indicated that an agreement to discharge the mortgage had been reached. The zoning relief was obtained, limiting the use of the property to an insurance agency. A closing was scheduled for June 26, 1998.

*Repudiation of the Agreement.* On June 22, 1998, now being advised by new counsel, the plaintiff brought this action, repudiating the Agreement on the grounds it perpetuated an obligation to pay usurious interest which was illegal and should not be enforced. The plaintiff also contested the validity of the prepayment penalty. The issue of usurious interest had not been raised until this time. An escrow agreement was subsequently negotiated resulting in $50,000 being held back, the sale went through, and the mortgage was discharged.

CBG's answer denied they had violated the criminal usury statute or that their dealings were in any way illegal or that the note was voidable. They took the position that there had been no acceleration and that the prepayment penalty was valid.

They also counterclaimed, seeking to enforce the terms of the Agreement.

*Discussion.* The settlement agreement was an enforceable contract. A party who abandons a claim made in good faith in order to settle a dispute over that claim provides sufficient consideration to support the settlement agreement even though the claim ultimately might have been unsuccessful. See *Margolies* v. *Hopkins*, 401 Mass. 88, 91 (1987); *Richardson* v. *Department of Rev.*, 423 Mass. 378, 380 (1996). Here, CBG claimed in good faith that they had not accelerated the note, and that the information they provided to the plaintiff about the amount needed to pay off the note and discharge the mortgage was not an acceleration but simply a response to a request for information about what the prepayment penalty would be because the plaintiff wished to pay off the note. This was a viable good faith position for CBG to take. Significantly, in the settlement agreement, they agreed to take less than the amount to which they had claimed to be entitled.

The plaintiff argues that the settlement agreement itself was illegal and voidable because the prepayment penalty amounted to a required payment of usurious interest. The agreement was set forth in a letter dated May 21, 1998. It recited that the purchase and sale agreement was being amended to raise the price to $210,000, and that certain coolers and a ventilating system were going to CBG "along with a check for $191,000 in full satisfaction of the mortgage debt." There was no further characterization of disputed items as principal, interest, prepayment, or the like. It was a lump sum settlement for a compromise amount. It was not illegal on its face. It resolved a dispute between the parties over whether the defendant was entitled to a prepayment penalty. Even if the parties had seen their dispute from the beginning as involving the issue of the legality of charging allegedly usurious interest under the note, they would be entitled to reach an agreement and put such a dispute to rest. Questions about the enforceability of contracts that allegedly are tainted by illegality are not necessarily straightforward or obvious of solution. Compare *Town Planning & Engr. Assocs.* v. *Amesbury Specialty Co.*, 369 Mass. 737, 745-746 (1976). There is no good public policy reason on the

facts of this case to let the plaintiff inject a late blooming theory of usurious interest into a dispute that all parties resolved in good faith as a dispute over whether a note was accelerated and a right to a prepayment penalty was lost.

*Judgment affirmed.*